| 95 | 701 |
|100 | 229 |

| 95 | 701 |
|103 | 759 |

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## STRINGFELLOW V. SOMERVILLE.

### MARCH 24, 1898.

Absent, Cardwell, J.

1. WILLS—*Construction of.*—A testatrix, by the first clause of her will, expresses the desire that her child be permitted to remain with, and be reared by, the sisters of the testatrix, and be trained as their own. By the second clause she expresses the desire that her husband be made guardian of the child, and that he continue to manage the business and property of the testatrix as formerly, receiving the profits for the support of the child as far as need be, and the residue appropriating to his own use for life, and upon his death that the entire property be given to the child.

*Held:* The arrangement for the custody of the child was not intended to be temporary, but permanent, and to continue as long as necessary to accomplish the purposes of the will. The second clause of the will has reference to the property interests of the child, and not to the custody of its person.

2. PARENT AND CHILD—*Custody of Infant—Courts Consider Interests of Infant.*—Ordinarily the father is entitled to the care and custody of his infant child. But when the father is claiming to recover the custody of his child, the court will exercise its discretion according to the facts and what appears to be best calculated to promote the infant's welfare.

3. PARENT AND CHILD—*Transfer of Custody of Infant—Right to Reclaim Custody—Interest of Infant.*—Where a parent has transferred to another the custody of his infant child, by fair agreement, which has been acted on by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child unless he can show that a change of custody will materially promote the child's welfare.

4. PARENT AND CHILD—*Disposition of Custody by Mother's Will—Acquiescence by Father—Rights of Father.*—A mother cannot, by will, dispose of or defeat the natural right which the father enjoys to the custody of their child, and the duty which nature imposes

upon him to rear and support it, but where such disposition has been made by the mother, and acquiesced in for years by the father, and the affections of the child and the person into whose custody it has been committed have been mutually engaged, and the child is well cared for, the father cannot reclaim possession unless he can show that the change of custody will be materially to the interest of the infant. He might have asserted his right as father to the custody of his child on the death of his wife, but not after such lapse of time and acquiescence on his part.

5. PARENT AND CHILD—*Order Refusing Custody to Father—Intercourse Between Father and Child.*—In an order refusing a father possession of his infant child, it is error to provide for such intercourse between the father and the child as would be subversive of the discipline of those clothed with the duty of rearing it.

Error to a judgment of the Circuit Court of Culpeper county, rendered December 10, 1897, in a proceeding by writ of *habeas corpus* wherein the plaintiff in error was the petitioner, and the defendants in error were the respondents.

*Amended and affirmed.*

The object of the petition was to recover the possession of the petitioner's infant son. The Circuit Court awarded the writ, but on the hearing, refused the prayer of the petition for the possession of the infant. The following order was entered by the Circuit Court:

"This matter came on to be heard upon the petition of said Stringfellow, the return of the respondents thereto, and the answer of petitioner to said return, and a general replication thereto by the respondents, and upon the testimony of the witnesses taken *ore tenus,* as well as documentary evidence, and the child, Glassell Somerville Stringfellow, being produced in open court, this case was argued by counsel. On consideration whereof, the court, for reasons stated in writing and filed with the record, having reached the conclusion that the respondents do not illegally detain from the petitioner the custody of the child, Glassell Somerville Stringfellow, the court doth order

that the said petition of Geo. F. Stringfellow be dismissed, but without costs to either party, and that the said infant be remanded to the custody of respondents, and the court doth further order that the respondents, so long as the said child is in their custody, shall teach him, among other things, a due and proper regard for, and use all proper means to promote his love and affection for his father, and shall permit the father to have free and ready access to the said child at all proper, reasonable and suitable times and occasions, and they shall permit the petitioner to take said child to visit him at his own home at such proper and reasonable and suitable times and occasions as he may wish, not, however, exceeding ten days at any one time, and not exceeding sixty days in any one year following the entry of this order, but before calling for said child under this provision, the said petitioner is required to give respondents at least twenty-four hours' notice of the time when he will call for him, and it shall be the duty of the father to return said child to the custody of the respondents at the end of the periods herein limited, or sooner, if he so elects, but nothing herein contained shall be construed as finally adjudicating the final and permanent custody of said child."

*Eppa Hunton, Jr., Grimsley & Miller* and *G. D. Gray*, for the plaintiff in error.

*P. P. Barbour, Barbour & Rixey* and *Alex. F. Robertson*, for the defendants in error.

KEITH, P., delivered the opinion of the court.

George F. Stringfellow obtained a writ of *habeas corpus* from the Circuit Court of Culpeper county, to which Jennie G. and Kate Somerville were made respondents. The object of the writ was to determine who was entitled to the custody of Glassell Somerville Stringfellow, an infant of tender years, son of

the petitioner and nephew of the respondents. Ellen S. String-fellow, who before her marriage, was Ellen Somerville, died a few days after giving birth to the child who is the subject of this controversy. A short time before her death, the petitioner, at her instance, prepared her last will and testament, so much of which as need to be here considered being in the following language:

"Know all men by these presents, that I, Ellen S. Stringfellow, of the county of Culpeper and State of Virginia, being of sound mind and memory, do make and declare and publish this, my last will and testament:

"First. I desire that my child be permitted to remain with and be reared by my sisters, Jennie G. and Kate Somerville, and trained as their own, and my husband will aid them in sympathetic affection and support.

"Second. I desire that my husband be made guardian for my child, and to manage my business and property as he now does, carrying out all unfinished contracts and agreements made by me. That he shall continue the tin and stove business as long as he sees best for the interest of my child. He shall have the profits from my property to support my child, all above that to be used as he sees proper during his life, and then my entire property to be given to my son, Glassell Somerville Stringfellow."

The purpose disclosed in this will seems to have been long contemplated by the mother, and fully understood and approved by her husband and her sisters. Upon her death this will was admitted to probate, and, in accordance with its provisions, the infant child was delivered to the care and custody of Jennie G. and Kate Somerville, and was by them taken to their home, where it has since been reared and nurtured with the most loving and tender care. The language of the will leaves no room for doubt or construction as to the wish of the testatrix. "I desire that my child be permitted to remain with and be reared by my sisters, Jennie G. and Kate Somerville, and trained as

their own." What language could be more explicit? "To re-
main with;" to continue in an unchanged condition; to abide; to
stay. The language employed is not appropriate to a temporary
arrangement. No period is fixed to its duration short of the ac-
complishment of the purpose with which the arrangement was
made. "My child," said the dying mother, is to be "reared by
my sisters," that is to say, is to be "educated," "instructed,"
"brought up to maturity" by them. The measure of authority
which she intended to confer is conveyed in language equally
apt and comprehensive. What broader terms could the mother
have employed than those here used by which she consigns her
offspring, from whom she is to be taken by an untimely death,
to the loving care of her sisters, to be "trained as their own."
As far as it was in her power to do so, her sisters were clothed
with plenary power and duty with respect to this child, while
the husband was reminded that it would be for him "to aid them
in sympathetic affection and support." If her will is to prevail
with respect to her child, the sisters are the principals to whom
its execution is confided, and the father becomes their aid and
auxiliary.

In the second clause of the will, it is true, she declares her de-
sire that her husband "be made guardian for my child and to
manage my business and property as he now does, carrying out
unfinished contracts and agreements made by me." Reading
the first and second clauses of the will together, placing our-
selves as near as may be in the situation of the testatrix, look-
ing to her previously declared intention and to her full knowl-
edge of the whole environment, we cannot doubt that the second
clause has reference to the duties of a guardian with respect to
the business, the property, the contracts, and agreements in
which she had been interested, and was not intended as a limi-
tation or restriction upon the disposition which she had made
in the first clause with respect to the person of her child.

Ordinarily the father is entitled to the care and custody of
his infant child (*Merritt* v. *Swimley*, 82 Va. 433; *Coffee* v.

*Black,* Id. 567), but where the father is before the court claiming to recover the custody of his child, the court will exercise its discretion according to the facts, and continue what will be best calculated to promote the infant's welfare. *Coffee* v. *Black, supra.*

In *Green* v. *Campbell,* 35 West Va. 699, the above principles are thus stated: "The father is the natural guardian of his infant child, and, in the absence of good and sufficient cause shown, is entitled to its custody. But the court is in no case bound to deliver the child into the custody of any claimant, but may leave it in such custody as the welfare of the child may appear to require."

We are not dealing with absolute rights of property. Says Judge Brewer, in *Chapsky* v. *Wood,* 26 Kansas, 650: "A parent's right to the custody of the child is not like the right of property, an absolute and unconditional right, for if it were it would end this case and relieve us from all future difficulties." And further on he says: "The paramount consideration is, what will promote the welfare of the child?"

The question is not which of the two claimants can surround the infant with greater luxury, or which of the two will be able to give or bequeath him the greater amount of money or property, but with which of them is he likely to be reared and trained so as to make him the better man and the better citizen.

We do not care to enter upon a detailed discussion of the evidence. It is sufficient to say, as is said by the learned judge of the Circuit Court, that reputable witnesses do question the morality of the petitioner, and we heartily concur in the conclusion reached by the Circuit Court, "that there can be no question that this little boy, in the home of his aunts, has been kindly cared for, and properly nurtured and instructed; that all the surroundings of their home, and his daily associations, are all that could be desired to promote his happiness and physical development;" and we earnestly unite in the regret expressed by the Circuit Court that the "relations which have heretofore existed

between these litigants up to a short time since had not continued to the present time and thus avoided this unhappy controversy." The fitness of the aunts is nowhere questioned, and is doubtless beyond the reach of all challenge or debate.

Where a parent has transferred to another the custody of his infant child by fair agreement which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child unless he can show that a change of the custody will materially promote his child's welfare. *Green* v. *Campbell, supra.*

As far as the child is concerned, its present situation leaves nothing to be desired, and we are free to consider the rights of the father unembarrassed by any apprehension with respect to its welfare.

We do not consider that the mother could by will dispose of or defeat the natural right which the father enjoys to the custody of the child, and the duty which nature imposes upon him to rear and support it; but, as we have seen in the beginning of this opinion, the mother had a clear and settled purpose to entrust her child to her sisters to the exclusion of the father so far as it was in her power to do so. Of this purpose the father was fully advised. He wrote the will which declares this intention in words too plain for misapprehension. He assented to its execution, and immediately upon the death of the mother surrendered the custody of this infant to the respondents, and in their care it has remained and "been trained as their own" from that day to the present time. Courts pay great respect to the contemporaneous construction of instruments and contracts given by the parties to, or those interested in, them, and the contemporaneous construction in this case given at the earliest moment and acted upon without question or protest for five years, is in accordance with the manifest intention of the mother.

It was claimed in the record and in the argument that the construction placed upon their authority over the child by the respondents subordinated them to the rights of the father, and

there is some evidence to the effect they considered that the law clothed the father with paramount authority with respect to his child of which he could not divest himself by any contract or act of his own.    There never was any doubt on their part as to what their sister intended, or as to what they are the petitioner originally intended, but moved by the opinion expressed to them by their kinsman and friend, Atwell Somerville, they admitted the father's right, because they believed that whatever he may have done or said his authority was fixed by law and could not be surrendered or defeated.    There are authorities to that effect, and it is true that no contract that the father can make will relieve him of his duty with respect to his child where the interest of the child requires the exercise of parental duties upon his part.    Without doubt the petitioner could have asserted his right as father to the custody of his infant upon the death of his wife, and had he done so his demand could not have been successfully resisted; but the whole situation changes when, by his voluntary act, he permits the custody of the child to pass to the respondents; and, while the will of the mother does not constitute a contract, it may with propriety be looked to by the court to ascertain the meaning, intent, and purpose actuating the petitioner and respondents when his child was placed with its aunts, and was allowed to remain with and be reared and trained by them for a period of nearly six years.

In *Pool* v. *Golt*, 14 Law Reporter, 269, Chief Justice Shaw delivering the opinion, it is said the facts "furnished reason for supposing that the father surrendered his rights over the child by a tacit understanding, if not by an express agreement. * * * By his own acquiescence he has allowed the affections on both sides to become engaged in a manner he could not but have anticipated, and permitted a state of things to arise which cannot be altered without risking the happiness and interest of his child.    He has allowed the parties to go on for years in the belief that his rights were waived."

In *Green* v. *Campbell*, 35 West Va. 704, it is said: "The feel-

ings and rights of one whom the father has put in the place of parent, and between whom and the child such relation has created mutual affection, are not to be subject to the whim and caprice of the father; but, unless it appears that the best interests of the child imperiously demand, the court, in dealing with relations so delicate, so easily set ajar irreparably, will follow the discreet course of letting well enough alone."

Borrowing the language of Justice Brewer in *Chapsky* v. *Wood, supra,* and applying it to this case, this record shows that "this child has had, and has to-day, all that a mother's love and care can give. The affection which a mother may have and does have, is an affection which perhaps no other one can really possess; but so far as it is possible, springing from years of patient care of a little, helpless babe, from association, and as an outgrowth from those little cares and motherly attentions bestowed upon it, an affection for the child is seen in respondents that can be found nowhere else."

We do not doubt that the father and mother of the petitioner deserve all that was said in their praise in the record and during the argument, but the weight of years is pressing heavily upon them both, and in the course of nature any arrangement which devolves duties upon them must be of a temporary nature. To take this child from its present custody in reliance upon any aid which its paternal grandparents might render in its training would be doubtful and hazardous in the extreme in view of their great age. · It is wise to let well enough alone.

We are of opinion that the Circuit Court committed no error in rejecting the prayer of the petitioner. We are further of opinion, that so much of its order as undertakes to regulate the intercourse between the father and the child would be subversive of that discipline which those clothed with the duty of rearing a child must exercise in order that they may well and faithfully discharge their trust.

We are further of opinion that there is nothing in the record to suggest any ground for apprehension that the respondents

will fail to instil into the breast of this infant proper love and respect towards his father.    Nor is there any reason to apprehend, as is shown by this record, that they will impede, hinder or obstruct him in his influence and association with his child.    It is true that the kindly feeling which at one time united the petitioner and respondents as one family seems to have been in some measure interrupted, but that interruption was due to causes which need not here be discussed, but which were wholly unconnected with the relations existing between the father, his child and the respondents.

An order will therefore be entered modifying the judgment appealed from, and in lieu of the specific provisions of the order regulating the intercourse between the father and the child, the judgment of the Circuit Court will be affirmed, with instructions that the case be dropped from the docket, with leave to any party at any time to reinstate it and ask for any relief which a change of circumstances may render necessary or proper, either with respect to the care and custody of the child or the intercourse between the child and the petitioner.

*Amended and affirmed.*