## CUSTODY OF CHILDREN.

Common Pleas Court of Wood County.

IN RE DOROTHY E. TAYLOR.

Decided, January Term, 1913.

*Jurisdiction—Where Custody of Child is in Dispute—Residence of One Parent and Presence of Child Sufficient to Confer Authority Upon a Court to Act—Best Interests of Child to be Guarded.*

In an action involving custody of a child, as to which there has been no judicial determination, the residence of the parent having the present custody is sufficient to confer jurisdiction, and where the best interests of the child seem to require that such custody be continued it will not be disturbed, notwithstanding possession of the child was obtained by kidnapping it from the contesting parent in another state.

*Erwin Cummins* and *B. F. James,* for petitioner.
*McClelland & Bowman,* for respondent.

DUNCAN, J.

This case is here on error from the probate court of this county. It was an action in habeas corpus instituted by Dorothy E. Taylor of Washington county, Pennsylvania, against Charles A. McGarvey, having in custody in this county one William Taylor McGarvey, seven years of age, whom she claims the respondent unlawfully detains from her. The court below denied the prayer of the petition and awarded the child to the respondent as long as he should keep and care for it in the home of his brother, Benjamin McGarvey, in this county, and the petitioner is now here seeking reversal of that judgment upon the ground that the same is against the law and the evidence.

The respondent and the petitioner were husband and wife, and said William Taylor McGarvey is a child of the marriage. They were divorced September 19, 1912, upon her application, by the Court of Common Pleas of Washington County, Penn-

sylvania. They lived together in said county with this child as a member of the family until June 12, 1912, the date of the beginning of the divorce action. The respondent thereupon left the home and soon after came to this county, but the child continued to live with the petitioner, its mother.

On August 13, after the action for divorce was begun, but before it was heard, the parties entered into a written agreement settling their property rights, stating the fact that their children, this child and another, were in the custody of the petitioner and reserving full right and privilege in the respondent to visit them, but relieving him from any liability for their support as long as they remained with her. The agreement does not in terms provide for their custody. That part of the agreement reads as follows:

"It is further understood and agreed between the parties hereto that the party of the first part (Charles A. McGarvey) shall have the undisturbed right at any time whatsoever to call upon, see and converse with the children of the said parties hereto, as long as they may remain living separate and apart, now in the possession of the party of the second part (Dorothy E. McGarvey), and for the consideration aforesaid, the party of the second part, hereby releases the party of the first part from all liability for the support and maintenance of herself and children."

On the very night of the day this agreement was signed, August 13, 1912, the respondent went to an adjoining county to that of Washington, where said child was then temporarily with its maternal grandmother, and stole it away, took him to Pittsburgh and thence to Ohio and this county, where it has since been living with the respondent, his father, at the home of Benjamin McGarvey, his father's brother.

After that the said divorce case proceeded to trial and a divorce was granted the said petitioner from the respondent, September 19, 1912, on the ground of his adultery as in the petition set forth. But nothing is said about these children in the divorce petition, in the evidence attached to the certificate or in the judgment of the court, or that they had any children.

The petitioner, for more than a year, was, and still is, the keeper of a restaurant and rooming house in the village of Cannonsburg, a town of six or seven thousand population, lives there in the house, attends to all finances and manages the business and has a number of employees, both men and women, and manages to make a gross earning of fifteen hundred to two thousand dollars a month, which, of course, speaks well for her business ability and her ability in a financial way to care for her children. She not only employs some men in the running of this restaurant, but she is brought into constant association with them, especially with one William Van Sickle, a married man not living with his wife, on whom she relies for the professional part of the work and as a confidential business adviser, which, of course, created some suspicion upon the part of the respondent that Van Sickle had taken his place in her affections. I do not say that there was anything wrong between the petitioner and Van Sickle, but there was enough in their relations and conduct towards each other to cause others to be suspicious as well, and it became the subject of much talk. I do say, however, that when a married woman with husband and children leaves her home and enters business for herself, she enters another realm from wife and mother, loosens the ties of the marital relation and must necessarily neglect her duty as wife and the care and attention due her children of tender years otherwise bestowed by a devoted mother. Who can say then, that there was no reason in the probate court denying this writ upon the ground that the petitioner did not have a proper place and was not a proper person to have the custody and control of this child?

A reading of the evidence given in the probate court would also lead one to think, from his relations with other women, that there was something to the claim that the respondent had a venereal disease two or three times and warrant the conclusion of the probate court, based on such facts, that he was not a fit person to have the unconditional custody and control of this child.

We have a statute in Ohio, Section 8032, General Code, which provides that, ''When a husband and wife are living separate

and apart from each other, or are divorced, and the question as to the care, custody and control of the offspring of their marriage is brought before a court of competent jurisdiction in this state, they shall stand upon an equality as to the care, custody and control of such offspring, so far as it relates to their being either father or mother thereof,'' which, of course, leaves it open for the court to decide the matter in such way as appeals to his judgment may promote the child's welfare. This seems to be the Polar star for all adjudications on the subject.

In *Clark* v. *Bayer*, 32 Ohio St., 299, 305, Judge Ashburn says:

''In cases of controverted custody, the present and future interests of the minor controls the judgment and directs the discretion of courts. While the legal rights of parents are to be respected, the welfare of the minor is of paramount consideration.''

In *Richards* v. *Collins*, 45 N. J. Eq., 283, where the custody of a child was in controversy, it is said:

''In a controversy over its possession its welfare will be the paramount consideration in controlling the discretion of the court. The strict right of the parent will be passed by, if a judgment in observance of such rights would substitute a worse for a better condition.''

In *Kelsey* v. *Green*, 69 Conn., 291, Chief Justice Andrews says:

''In contests between parents and third persons as to the custody of a child of such parents, the opinion is now almost universal that neither of the parents has any right that can be allowed to militate against the welfare of the infant; the paramount consideration is what is really demanded for its best interests.''

In *Chapsky* v. *Wood*, 26 Kan., 650, Judge Brewer says:'

''A parent's right to the custody of a child is not like the right of property, an absolute and uncontrollable right. If it were, it would end this case. The paramount consideration is, what will promote the welfare of the child.''

In *United States* v. *Green,* 26 Fed. Cas., 30, Judge Story says:

"When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances and ascertain whether it will be for the real permanent interest of the infant."

In *Stringfellow* v. *Somerville,* 95 Va., 701, Judge Keith says:

"The question is not which of the two claimants can surround the infant with greater luxury, or which of the two will be able to give or bequeath him the greater amount of money or property, but with which of them is he likely to be reared and trained so as to make him the better man and better citizen."

This being the rule, I am unable to say from the evidence in this case that the order of the probate court for the disposition of this child was manifestly wrong, but that it was manifestly right.

The feature of this case which has given me the most trouble is the fact that the respondent procured possession of this child by a trick and brought him into this jurisdiction and state other than his domicile, where the parties had lived and were known and whose courts had a better opportunity of investigation and for determining his best welfare. I have always noticed that where a party resorted to some trick or stratagem to give another court jurisdiction, or in an effort to put himself in a better position to win, or where the court would have to approve a dishonest proposition in order to decide for him, that it was pretty safe to decide against him. So I have thought in this case, but I am unable to find the law that will warrant me in so deciding.

The respondent had been a resident of this state for three months when this suit was begun. On the record, the respondent had as much right to the custody of this child as the petitioner, and if he had such right, it can make no difference how he acquired its custody in order to realize the actual enjoyment of the right. The domicile of the child is changed with the domicile

of its parents or the domicile of that parent having its lawful custody.

In *Lanning* v. *Gregory*, 99 S. W. Rep., 542 (Tex.), the Supreme Court of Texas has laid down the rule that "The domicile of an infant follows that of his father upon the latter's changing his domicile from one state to another, notwithstanding an agreement between its parents, upon their separation, that the mother should have the control of the child."

In *Wakefield* v. *Ives*, 35 Iowa, 238, it appearing that the child was born in Minnesota and resided there when its mother was given a decree of divorce in that state and the custody of the child, upon constructive service against the father, a nonresident, the decree was recognized as binding and conclusive in a habeas corpus proceeding in Iowa by the mother to secure the custody of the child from the father, whi had obtained its custody in some way not shown.

In *State* v. *Rhoades*, 29, Wash., 61, it was held even upon the assumption that the children were domiciled in Colorado with their father, the latter's voluntary appearance in a suit for divorce brought by his wife in California was sufficient to confer jurisdiction upon the court of the latter state to award the custody of the children, it appearing that, shortly before the divorce, they had been taken by the wife from the husband's domicile in Colorado without his knowledge, and brought to California.

In *Hanrahan* v. *Sears*, 72 N. H., 71, one appointed in Vermont guardian of the person of a minor, who was then resident of that state, brought habeas corpus proceedings in New Hampshire to obtain custody of the child from relatives with whom the minor had lived for a number of years after the relator's appointment as guardian. The court seems to have entertained no doubt as to its jurisdiction to determine the custody of the child, and to award it to the defendants as its best interest demanded.

In *De la Montanya* v. *De la Montanya*, 112 Cal., 101, the court, in denying the jurisdiction to award the custody of minor children who were with their father outside of the territorial jurisdiction, upon constructive service of summons against the father, even upon the assumption that the father, though absent

from the state, was domiciled therein, and that the court had jurisdiction to dissolve the marriage relation, said: "If the children are within the jurisdiction, and the defendant is personally served with summons, and perhaps if he is not, the court may award the custody of the children to one of them."

In *Kline* v. *Kline*, 57 Iowa, 386, it appearing at the time of a decree of divorce rendered in Wisconsin in favor of the husband, who was domiciled there, upon constructive service against the wife, who had acquired a separate domicile elsewhere, the minor children were living with the wife in Iowa, it was held that, while the decree was valid and entitled to recognition in the latter state so far as it affected the status of the husband and wife, it was without jurisdiction, and not entitled to recognition so far as the attempt to fix the custody of the minor children.

To the same effect is *Rodgers* v. *Rodgers*, 56 Kan., 483, but it will be noticed that the presence of the child within the territorial jurisdiction aided by the residence of one of the parents is lacking in both of these cases. Here we have the residence of one parent, the presence of the other and the presence of the child, and I therefore hold that the probate court had jurisdiction to make the order complained of. And holding the views expressed on the first proposition, it follows that the judgment of that court should be affirmed.

Judgment affirmed at the costs of the plaintiff in error and execution is awarded.