### 10722

#### GILBERT v. SMITH.

(109 S. E. 114)

HABEAS CORPUS—CUSTODY OF ORPHAN AWARDED TO MATERNAL
    GRANDMOTHER WITH WHOM SHE HAD ALWAYS LIVED, NOTHWITH-
    STANDING PATERNAL GRANDMOTHER'S GREATER FINANCIAL ABILITY.
    —Custody of a girl of seven, whose father died when she was
    a baby, and who had always lived with her maternal grand-
    mother, to whom her mother, who has since died, gave her at
    her second marriage, will be given to such grandmother, other
    things being equal, notwithstanding the greater financial ability
    of her paternal grandmother, though this may entail the loss of
    a college education, and though the trial court, on affidavits and
    certain oral testimony, made award to the paternal grandmother,
    on the general ground of best interests of the child; conditioned
    however, that the maternal grandmother give bond for faithful
    care, maintenance, and education of the child, at least to the
    extent of a high school course.

Before McIVER, J., Darlington, September, 1920.   Re-
versed on condition.

Action by Adella Gilbert, petitioner, against Catherine M.
Smith, respondent, involving custody of Jennie Belah Gil-
bert.   From order giving the custody to petitioner the de-
fendant appeals.

*Messrs. E. C. Dennis* and *Jas. R. Coggeshall,* for appel-
lant, cite:   *Parol gift of child by parent effective*:   73 S.

C., 302; 27 L. R. A., 60; 82 Am. Dec., 223; 40 L. R. A., 623; 37 Am. Rep., 801; 6 Rich., 344; 19 S. C., 605.

*Messrs. M. L. Smith, J. M. Spears* and *L. M. Lawson,* for respondent, cite: '*Action at law and finding of Circuit Judge not reviewable*: 84 S. C., 476. *How custody of minors may be disposed of*: 1 Civ. Code 1912, Sec. 3785; 73 S. C., 296; 84 S. C., 552; 20 R. C. L., 603.

October 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is a habeas corpus proceeding instituted by Mrs. Adella Gilbert, the paternal grandmother of an infant girl, Jennie Beulah Gilbert, aged seven years, against Mrs. Catherine M. Smith, the maternal grandmother of the child, for the purpose of having the Court award the custody of the child to her.

The matter was heard by Judge McIver upon affidavits and certain oral testimony. He awarded the custody of the child to the petitioner, the paternal grandmother, upon the general ground that it was for the best interests of the child, with no detailed statement of the considerations which moved him to that conclusion. The maternal grandmother has appealed to this Court.

It appears that B. H. Gilbert, a son of Mrs Adella Gilbert, the petitioner, about ten years ago married Lila Smith, a daughter of Mrs. Catherine M. Smith, the respondent below, appellant here; the young couple took up their abode with Mrs. Smith, and the little girl was born in Mrs. Smith's home November 9, 1913; when the little thing was only a few months old the father died, the mother continuing to live with her mother; in November, 1919, Mrs. Gilbert, the mother of the girl, married James Galloway and moved from the old home to the home of her second husband, leaving the child with Mrs. Smith; Mrs. Galloway lived less than a year after her second marriage; she died July

16, 1920; with the exception of a week's visit to the home of the elder Mrs. Gilbert after the death of her mother, Mrs. Galloway, the child has lived continuously in the home of Mrs. Smith, who naturally has become greatly attached to her; from the time of her birth until the present she has known no other home; her clothes and trunk have been always in the home of Mrs. Smith and are there now; soon after the death of Mrs. Galloway, July 16, 1920, this proceeding was instituted, on August 25th, by Mrs. Gilbert to have the Court direct Mrs. Smith to surrender the custody of the child to her and decree in her legal right to her custody, care, and maintenance.

It was in evidence that Mrs. Galloway gave the child to her mother when she left the old home with her husband, stating that she wanted the child to remain with the respondent; that she declared to at least three witnesses that she had given the child to her and desired her to have the care, custody, and rearing of the child.

Even in a contest between the father or mother and one to whom they had by a parol gift surrendered the custody of the child, the Court will greatly respect the gift. As this Court says in Ex parte Reynolds, 73 S. C., 302; 53 S. E., 402; 114 Am. St. Rep., 86; 6 Ann. Cas., 936:

"Nevertheless, if a parent undertakes to make a parol contract absolutely bestowing the custoldy of the child upon another, and allows the child to acquire a new home, and strong attachments and tender associations to spring up, the Court will not, at his instance, ruthlessly break these ties which have come into existence through his acquiescence and neglect to assert his right. In such case the parent is estopped and the affection of those who have cared for the child and learned to love it will not be sacrificed unless the interests of the child require that it should be restored to the parent."

See, also, *Enders v. Enders,* 164 Pa., 266; 30 Atl. 129; 27 L. R. A., 60; 44 Am. St. Rep., 586. *State v. Libbey,*

44 N. H., 321; 82 Am. Dec., 223. *Stringfellow v. Somerville,* 95 Va., 701; 29 S. E., 685; 40 L. R. A., 623. *Bonnett v. Bonnett,* 61 Iowa; 199; 16 N. W., 91; 47 Am. Rep., 810.

The social standing of the two grandmothers appeared to be the same; their characters are above reproach; the moral atmosphere of one home is as good as the other; there is no claim that Mrs. Smith is not financially able to rear and educate the child; it is conceded that the petitioner, Mrs. Gilbert, is in a more favored financial condition than Mrs. Smith; eight witnesses testify to the excellent character of Mrs. Smith, her financial ability to rear and educate the child, and to her tender affection for the child; six witnesses testify to the excellent character of Mrs. Gilbert and her greater financial ability to care for and educate the child.

The supreme test is the interest of the child, its future welfare and happiness. Ex parte Schumpert, 6 Rich., 344. Ex parte Reed, 19 S. C., 605.

We cannot say that in a home of comfort and affection, even though lacking luxury and trained in frugality, she will not make a better woman than in one of greater comfort, greater luxury, greater educational advantages; we cannot say that the greater financial ability of the one shall be the determining factor.

We cannot say and believe that, if the child were of sufficient age to make the choice for herself, her decision that a life based on love and gratitude and fidelity cannot be given in exchange for one of greater ease and personal advantage would not only commend itself to every loyal soul, but would make for a more splendid character. As we conceive our duty, we make that choice for her, in her best interest.

At the same time the material interests of the child must be safeguarded. This decision will probably, though it should not, result in financial loss to her, and the loss, perhaps, of a college education. The appellant, whose tender feelings for the child have weighed heavily in the scales,

should in a measure insure a compensation for these losses.
She should give a bond to the general guardian of the child
in the sum of $5,000, with sufficient surety approved by the
Clerk of Court, conditiond upon the faithful discharge of
the trust reposed in her, the care, maintenance, and educa-
tion of the child, at least to the extent of a thorough high
school course; this bond to be executed and delivered within
thirty days after the filing of the remittitur.

· The judgment of this Court is that the order appealed
from be reversed, and that, upon the conditions stated above,
the right of the custody, care, maintenance, and education
of the child be adjudged in the appellant; upon default in
the performance of said conditions the judgment below will
stand affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER
concur.

MR. JUSTICE WATTS (dissenting):    I cannot concur
in the opinion of Mr. Justice Cothran.    Judge McIver, who
heard the case on the Circuit, was the resident Judge, and
heard the cause in part on affidavits and had some of the
witnesses before him.

We have repeatedly held that the finding of fact of the
Circuit Court will not be disturbed unless it is against the
weight of the evidence, and in the recent case of *Manigo
v. Tyler,* 107 S. E., 914, filed June 30, 1921, as to the cus-
tody of infants, we refused to substitute our judgment for
that of the Circuit Court, so we are in the position of hold-
ing that in an ordinary equity case we  will sustain the
finding of the Circuit Court unless it is against· the pre-
ponderance of the evidence, but in a case involving the cus-
tody of children we have no fixed rule to go by, but will
decide it according to any caprice.

The finding of the Circuit Judge, in my opinion, pro-
tects the infant, and is ·far better for her interest than that
of this Court.   The decree insures her education, even a
college education, and while I do not approve of an avari-

cious person, or one who worships money, yet I have great respect for money honestly acquired, and I think one who by frugality, honesty, thrift, and industry accumulates it is to be commended, and his virtues are as apt to be good as that of one who is in poverty. I have great respect for an honest poor person, but I do not concede that he has any more virtue than one who has acquired an honest independent competency. It is all very well to talk about "plain living and high thinking," but the person who has to do it from necessity, in a majority of cases, would rather have more high living and do less thinking.

I do not subscribe to the doctrine that it is better for an infant to be in the custody of her maternal people than her paternal. This reason is founded on pure sentiment and without reason. In England the husband and father has some rights that the Courts respect. Here he has none, nor has his people any when he claims them in conflict with that of the wife and her people.

The Court has the right to award the custody of the infant, looking to her best interest. Judge McIver's decree looked to that, and, unquestionably, from my viewpoint, was correct.