865 So.2d 1207 (2003)
Heather SMITH
v.
Brian SMITH.
2020103.
Court of Civil Appeals of Alabama.
May 23, 2003.
*1208 Yvonne Gabrielson, Dothan, for appellant.
Douglas M. Bates, Dothan, for appellee.
THOMPSON, Judge.
Heather Smith ("the mother") and Brian Smith ("the father") were divorced by a November 1, 1999, judgment of the trial court. One child was born of the parties' marriage. Pursuant to the terms of the divorce judgment, the mother was awarded primary physical custody of the parties' minor child, and the father was awarded standard visitation. The father petitioned to modify the divorce judgment, and on April 12, 2001, the trial court modified the judgment to allow the father visitation with the child that accommodated the father's work schedule; the father worked four days and then was off for four days. In addition, the modified judgment required that the father give the mother one week's notice prior to exercising his visitation.
On March 28, 2002, the father petitioned for a modification of custody, alleging a material change in circumstances. The father requested that he and the mother share joint custody of the child, with each parent having physical custody of the child for four consecutive days. The wife answered on April 25, 2002, and filed a "counterclaim" seeking to modify the father's *1209 visitation. Specifically, the wife requested that the trial court award the father visitation consistent with the trial court's original divorce judgment. In addition to his modification request, the father filed a motion for immediate relief on March 28, 2002, requesting that the trial court enter an order directing the wife to allow him his one-week spring-break visitation with the child as provided for in the trial court's previous orders. The trial court granted the father's motion.
The trial court conducted an ore tenus hearing on the father's petition to modify custody on July 11, 2002, and on that same day entered a judgment in which it awarded the parties joint custody of the child. The trial court also awarded the parties joint physical custody of the child, "alternating in four-day intervals." In addition, the trial court reduced the father's child-support obligation to reflect the new joint-custody arrangement. The mother filed a motion to alter, amend, or vacate the judgment, and a motion seeking to hold the father in contempt; the trial court denied those motions on September 27, 2002. The mother appealed.
It is well settled that when a trial court receives ore tenus evidence in a child-custody-modification proceeding and bases its judgment on its findings of fact, that judgment will not be reversed absent an abuse of discretion or a showing that the findings are plainly and palpably wrong. West v. Rambo, 786 So.2d 1138 (Ala.Civ.App.2000); E.M.C. v. K.C.Y., 735 So.2d 1225 (Ala.Civ.App.1999). A judgment based on ore tenus evidence is presumed correct and will be affirmed if supported by competent evidence. N.G. v. L.A., 790 So.2d 262 (Ala.Civ.App.2001).
As was previously mentioned, the parties divorced in November 1999 and the mother was awarded custody of the child. The husband was awarded standard visitation. After petitioning to modify his visitation with the child in April 2001, the trial court amended the father's visitation as follows:
"Due to the [father's] work schedule that requires him to work four days and be off four days ... the parties shall agree for the [father] to have visitation with said child during the time that he is not working, the duration of such visitation shall be at least comparable with that time he would have were the visitation exercised every other weekend. The [father] shall notify [the mother] of his work schedule no less than a week in advance of the time he could exercise visitation."
The parties' child was three years old at the time of the hearing in this matter. The father is a criminal investigator with the Dothan police department and has worked in this capacity for two years. The father testified that his work schedule has changed so that he now works on the weekdays from 8 a.m. until 4 p.m. He lives in a mobile home that at the time of the hearing he shared with his fiancee.
The mother is employed by Eagle Adjustment, where she had worked for one month at the time of the hearing. Before working for Eagle Adjustment, the mother had worked for Alltel and Mia's restaurant. The mother resided with her fiance at the time of the hearing. Both parties testified that they would cease cohabiting until they are married.
The parties' divorce judgment awarded the father one week of visitation with the child during spring break. The father testified that he had tried to exercise his spring-break visitation during the week beginning March 30, 2002, but that the mother had denied him his visitation with the child. The mother testified that the husband had not given her notice of his *1210 desire to visit the child in accordance with the divorce judgment and that she had already made plans for the child. According to the father, the one-week-notice requirement to exercise his visitation with the child is a burden. He also stated that he brought the instant action against the mother because she denied him spring-break visitation with the child.
The father testified that he wanted the trial court to award the parties joint physical custody of the child. According to the father, joint custody of the child, with custody alternating between the parties every four days, would give each of the parties an opportunity to have the child on weekends as well as weekdays. The mother testified that the child has a set schedule and routine that would be adversely affected if the parties shared joint custody.
Before the hearing, the child and the mother had lived at the same residence for one year. The child attended Kiddie College daycare during the week, and, the mother testified, she had discipline problems when she was not following a routine. The child had attended Kiddie College daycare since she was four weeks old. The father testified that he does not have a set routine or schedule when he has the child; however, he stated that he does believe stability and consistency are important to the child. According to the father, alternating custody every four days would offer the stability the child needs.
On appeal, the mother contends that the evidence does not support a modification of custody under the applicable standard of review. Specifically, the mother avers that the father failed to establish a material change in circumstances that justified the modification of custody of the child under the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
At the outset we note that, pursuant to the original divorce judgment, the mother was awarded physical custody of the child, and, therefore, she was the custodial parent. See Hays v. Elmore, 585 So.2d 40 (Ala.Civ.App.1990). Based on the trial court's prior award to the mother of primary physical custody, we are governed by the standard set forth in Ex parte McLendon in reviewing the trial court's modification of custody. Pursuant to Ex parte McLendon, a parent seeking to modify custody must demonstrate that the change in custody would materially promote the child's welfare and that the disruption caused by the change in custody would be offset by the advantages of that custody change. Ex parte McLendon, supra. The evidence in support of a modification of custody must be substantial, and it must demonstrate an overwhelming necessity for a change. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App.1992).
In the instant case, we cannot say, based on the record before us on appeal, that there was substantial evidence of the existence of a material change in circumstances warranting a change in the custody of the child. The father testified that the mother's denial of his visitation privileges, specifically the denial of a week-long spring-break visitation, constituted a material change in circumstances warranting a change in custody. Besides that incident, the father failed to demonstrate how a change in custody would materially promote the best interests of the child and how the benefits of that change would offset the inherently disruptive effect caused by a change in custody. See Ex parte McLendon, supra. Without the father's meeting the stringent standard set out in Ex parte McLendon, the trial court erred in its custody determination.
It is important to note that the father received his desired week of visitation with the child following the trial court's order *1211 granting his motion for immediate relief. The father's initial petition, filed simultaneously with his motion for immediate relief, was brought in an attempt to cure visitation problems between the parties. The father testified that he brought the instant action against the mother because the mother had denied him one week of spring-break visitation. However, this court has held that "[c]ustody of children should not be modified due solely to problems of visitation." Hays v. Elmore, 585 So.2d at 42; see also Ward v. Rodenbaugh, 509 So.2d 910 (Ala.Civ.App.1987). While the record demonstrates the father's difficulty in dealing with the mother regarding matters of visitation, a change in custody is not proper in such instances. The trial court's contempt powers are a sufficient method of regulating the mother's conduct in a manner that will enforce the visitation provisions of the trial court's judgments and best protect and serve the child's best interests.
Based on the foregoing, we conclude that the trial court erred in modifying custody of the child. For this reason, we must reverse the judgment of the trial court and remand this cause. The judgment of the trial court is reversed.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Judge, concurring in the result.
Undoubtedly, the most oft-repeated maxim in our cases dealing with child custody is that our "polestar" is the child's best interests. See, e.g., McConnell v. McConnell, 718 So.2d 78, 79 (Ala.Civ.App. 1998) (quoting Smith v. Smith, 448 So.2d 381, 383 (Ala.Civ.App.1984)). If, indeed, we mean this, then I believe we must reexamine our occasional reliance on the standard articulated in Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App.1992), namely, that before a court may order a change of custody, "[t]he evidence must be so substantial as to disclose an obvious and overwhelming necessity for a change." Id. at 1169. In my view, this "overwhelming-necessity" standard is inconsistent with the standard articulated in Ex parte McLendon, 455 So.2d 863 (Ala.1984), and, as such, sets the "bar" too high in many cases where the proposed custody change truly would be in the child's best interests.
The overwhelming-necessity standard is traceable to the pre-Ex parte McLendon case of Gray v. Gray, 45 Ala.App. 331, 230 So.2d 243 (Civ.1970). In Gray, however, the standard was articulated merely as the appellate-review standard that must be met to overcome the "ore tenus presumption" in favor of a trial court's judgment where the evidence is presented orally. Gray, 45 Ala.App. at 332, 230 So.2d 243 (relying upon Skipper v. Skipper, 280 Ala. 506, 195 So.2d 797 (1967), Snead v. Snead, 279 Ala. 344, 185 So.2d 135 (1966), and Bianco v. Graham, 268 Ala. 385, 106 So.2d 655 (1958)). None of the cases upon which Gray relied articulates the overwhelming-necessity standard or lends support for its usage as a substantive standard for a trial court in determining whether a change in custody is warranted.
In 1984, our Supreme Court decided Ex parte McLendon. The substantive legal standard expressed in Ex parte McLendon was the result of a desire by our Supreme Court to articulate a "formula," if you will, that would lead courts to a custody decision, in each case, that was in the child's *1212 best interests. The expression of this formula was accomplished in the context of concern that our courts should always factor into the "equation" the disruption to the child that would be caused by the proposed change. The "correct standard" according to the Supreme Court in Ex parte McLendon is:
"`Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'
"Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).
"Furthermore,
"`[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'
"Wood v. Wood, 333 So.2d 826, 828 (Ala. Civ.App.1976)."
455 So.2d at 865-66 (emphasis added). In Ex parte J.M.F., 730 So.2d 1190 (Ala. 1998), our Supreme Court stated:
"It is, of course, well established that a noncustodial parent seeking a change of custody must show not only that he or she is fit to have custody, but that the change would materially promote the child's best interests. Ex parte McLendon, 455 So.2d 863 (Ala.1984). This requires a showing that the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child. McLendon."
730 So.2d at 1194 (emphasis added) (quoted with approval in Riley v. Riley, [Ms. 2010707, November 15, 2002]  So.2d  (Ala.Civ.App.2002)). See also Grant v. Grant, 820 So.2d 824 (Ala.Civ.App.2001) (Murdock, J., dissenting); Pickett v. Pickett, 792 So.2d 1124 (Ala.Civ.App.2001) (Murdock, J., concurring in the result); Woodham v. Woodham, 539 So.2d 293, 295 (Ala.Civ.App.1988) ("[The party seeking to modify custody] has failed to prove that a change in custody would materially promote her children's welfare above and beyond the disruptive effect it would cause.").
Despite the articulation of this standard in Ex parte McLendon, this court has, during the 19 years since Ex parte McLendon, continued on occasion to give voice to the overwhelming-necessity standard of Gray v. Gray, sometimes citing the case of Klapal v. Brannon, 610 So.2d 1167 (Ala. Civ.App.1992), as does the majority opinion in the present case. During this same 19-year span, our Supreme Court has cited to this standard in only one case. See Ex parte Peppers, 703 So.2d 299 (Ala. 1997). The Supreme Court did so in a *1213 case in which, for all that appears from the opinion, the degree of disruption that would have been occasioned by a transfer of the child's physical custody would have been great, thus lending itself to requiring proof of an "overwhelming necessity" for change. Id. at 300-02.[1]
My review of the standard articulated in Ex parte McLendon and the reasons for that standard impel me to conclude that the overwhelming-necessity standard of Klapal is inconsistent with the Ex parte McLendon standard and that it "sets the bar" for changes of custody at a level higher than does Ex parte McLendona level that sometimes will be too high if we are truly serious about pursuing each child's best interests.
Notwithstanding the main opinion's inclusion of the Klapal overwhelming-necessity standard in its analysis, I conclude from the record in this case that the well-established standard for a change of custody as articulated in Ex parte McLendon was not satisfied in the present case. I therefore concur in the result reached by the main opinion.
NOTES
[1] In Ex parte Peppers, 703 So.2d 299 (Ala. 1997), the Supreme Court relied on one of the decisions of this court, Glover v. Singleton, 598 So.2d 995 (Ala.Civ.App.1992), in which the overwhelming-necessity standard was expressed. Glover v. Singleton, in turn, relied upon Whitfield v. Whitfield, 570 So.2d 700 (Ala.Civ.App.1990), which is a 1990 case. Though it was decided six years after Ex parte McLendon, Whitfield utilized the overwhelming-necessity standard without any reference to Ex parte McLendon, relying instead on Braswell v. Braswell, 460 So.2d 1339 (Ala.Civ. App.1984). Braswell was the first opinion issued by this court that employed the overwhelming-necessity standard as a substantive legal standard for determining whether a change in custody is warranted. In Braswell, this court stated:

"Our law is clear that one bringing a petition for modification of a prior order as to child custody has the burden of proving that a material change in circumstances affecting the child's best interest has occurred since the prior order. In order to overcome the rule of repose accompanying the prior order, the evidence of a change in circumstances must be so substantial as to disclose an obvious and overwhelming necessity for change of custody. Munchus v. Munchus, 412 So.2d 794 (Ala.Civ.App. 1982); Alford v. Alford, 368 So.2d 295 (Ala. Civ.App.1979). Put another way, in order to overcome the inherently disruptive effect of uprooting the child, there must be evidence to show that the child's best interests are promoted by the change in custody. McLendon v. McLendon, 455 So.2d 861 (Ala.Civ.App.1984); rev'd, 455 So.2d 863 (Ala.1984)."
460 So.2d at 1340-41. Thus, this court in Braswell relied upon two decisions of this court, Munchus v. Munchus, 412 So.2d 794 (Ala.Civ.App.1982), and Alford v. Alford, 368 So.2d 295 (Ala.Civ.App.1979), both of which were decided before the Supreme Court's decision in Ex parte McLendon. Neither of those earlier decisions articulated the overwhelming-necessity standard as anything other than the appellate-review standard that must be met to overcome the ore tenus presumption. The court then proceeded to articulate a truncated version of the standard explained in more detail in Ex parte McLendon, asserting something that was not stated in Ex parte McLendon, namely, that the Ex parte McLendon standard was merely the "overwhelming-necessity" standard "[p]ut another way." Braswell, 460 So.2d at 1341. In so doing, this court for the first time incorrectly treated the overwhelming-necessity standard as a substantive legal standard, incorrectly characterized it as synonymous with the Ex parte McLendon standard, and laid the foundation for its misuse in future cases as an extra-Ex parte McLendon gloss on the Ex parte McLendon standard.