Undoubtedly, the most oft-repeated maxim in our cases dealing with child custody is that our "polestar" is the child's best interests. See,e.g., McConnell v. McConnell, 718 So.2d 78, 79 (Ala.Civ.App. 1998) (quoting Smith v. Smith, 448 So.2d 381, 383 (Ala.Civ.App. 1984)). If, indeed, we mean this, then I believe we must reexamine our occasional reliance on the standard articulated in Klapal v. Brannon, 610 So.2d 1167
(Ala.Civ.App. 1992), namely, that before a court may order a change of custody, "[t]he evidence must be so substantial as to disclose an obvious and overwhelming necessity for a change." Id. at 1169. In my view, this "overwhelming-necessity" standard is inconsistent with the standard articulated in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), and, as such, sets the "bar" too high in many cases where the proposed custody change truly would be in the child's best interests.
The overwhelming-necessity standard is traceable to the pre-Ex parteMcLendon case of Gray v. Gray, 45 Ala. App. 331, 230 So.2d 243
(Ala.Civ.App. 1970). In Gray, however, the standard was articulated merely as the appellate-review standard that must be met to overcome the "ore tenus presumption" in favor of a trial court's judgment where the evidence is presented orally. Gray, 45 Ala. App. at 332, 230 So.2d 243
(relying upon Skipper v. Skipper, 280 Ala. 506, 195 So.2d 797 (Ala. 1967), Snead v. Snead, 279 Ala. 344, 185 So.2d 135 (Ala. 1966), andBianco v. Graham, 268 Ala. 385, 106 So.2d 655 (Ala. 1958)). None of the cases upon which Gray relied articulates the overwhelming-necessity standard or lends support for its usage as a substantive standard for a trial court in determining whether a change in custody is warranted.
In 1984, our Supreme Court decided Ex parte McLendon. The substantive legal standard expressed in Ex parte McLendon was the result of a desire by our Supreme Court to articulate a "formula," if you will, that would lead courts to a custody decision, in each case, that was in the child's *Page 1212 
best interests. The expression of this formula was accomplished in the context of concern that our courts should always factor into the "equation" the disruption to the child that would be caused by the proposed change. The "correct standard" according to the Supreme Court inEx parte McLendon is:
 "'Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'
 "Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).
"Furthermore,
 "'[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'
"Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App. 1976)."
455 So.2d at 865-66 (emphasis added). In Ex parte J.M.F., 730 So.2d 1190
(Ala. 1998), our Supreme Court stated:
 "It is, of course, well established that a noncustodial parent seeking a change of custody must show not only that he or she is fit to have custody, but that the change would materially promote the child's best interests. Ex parte McLendon, 455 So.2d 863
(Ala. 1984). This requires a showing that the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child. McLendon."
730 So.2d at 1194 (emphasis added) (quoted with approval in Riley v.Riley, [Ms. 2010707, November 15, 2002] ___ So.2d ___ (Ala.Civ.App. 2002)). See also Grant v. Grant, 820 So.2d 824 (Ala.Civ.App. 2001) (Murdock, J., dissenting); Pickett v. Pickett, 792 So.2d 1124
(Ala.Civ.App. 2001) (Murdock, J., concurring in the result); Woodham v.Woodham, 539 So.2d 293, 295 (Ala.Civ.App. 1988) ("[The party seeing to modify custody] has failed to prove that a change in custody would materially promote her children's welfare above and beyond the disruptive effect it would cause.").
Despite the articulation of this standard in Ex parte McLendon, this court has, during the 19 years since Ex parte McLendon, continued on occasion to give voice to the overwhelming-necessity standard of Gray v.Gray, sometimes citing the case of Klapal v. Brannon, 610 So.2d 1167
(Ala.Civ.App. 1992), as does the majority opinion in the present case. During this same 19-year span, our Supreme Court has cited to this standard in only one case. See Ex parte Peppers, 703 So.2d 299 (Ala. 1997). The Supreme Court did so in a *Page 1213 
case in which, for all that appears from the opinion, the degree of disruption that would have been occasioned by a transfer of the child's physical custody would have been great, thus lending itself to requiring proof of an "overwhelming necessity" for change. Id. at 300-02.[1]
My review of the standard articulated in Ex parte McLendon and the reasons for that standard impel me to conclude that the overwhelming-necessity standard of Klapal is inconsistent with the Exparte McLendon standard and that it "sets the bar" for changes of custody at a level higher than does Ex parte McLendon — a level that sometimes will be too high if we are truly serious about pursuing each child's best interests.
Notwithstanding the main opinion's inclusion of the Klapal
overwhelming-necessity standard in its analysis, I conclude from the record in this case that the well-established standard for a change of custody as articulated in Ex parte McLendon was not satisfied in the present case. I therefore concur in the result reached by the main opinion.
[1] In Ex parte Peppers, 703 So.2d 299 (Ala. 1997), the Supreme Court relied on one of the decisions of this court, Glover v. Singleton,598 So.2d 995 (Ala.Civ.App. 1992), in which the overwhelming-necessity standard was expressed. Glover v. Singleton, in turn, relied uponWhitfield v. Whitfield, 570 So.2d 700 (Ala.Civ.App. 1990), which is a 1990 case. Though it was decided six years after Ex parte McLendon,Whitfield utilized the overwhelming-necessity standard without any reference to Ex parte McLendon, relying instead on Braswell v. Braswell,460 So.2d 1339 (Ala.Civ.App. 1984). Braswell was the first opinion issued by this court that employed the overwhelming-necessity standard as a substantive legal standard for determining whether a change in custody is warranted. In Braswell, this court stated:
 "Our law is clear that one bringing a petition for modification of a prior order as to child custody has the burden of proving that a material change in circumstances affecting the child's best interest has occurred since the prior order. In order to overcome the rule of repose accompanying the prior order, the evidence of a change in circumstances must be so substantial as to disclose an obvious and overwhelming necessity for change of custody. Munchus v. Munchus, 412 So.2d 794 (Ala.Civ.App. 1982); Alford v. Alford, 368 So.2d 295 (Ala.Civ.App. 1979). Put another way, in order to overcome the inherently disruptive effect of uprooting the child, there must be evidence to show that the child's best interests are promoted by the change in custody. McLendon v. McLendon, 455 So.2d 861
(Ala.Civ.App. 1984); rev'd, 455 So.2d 863 (Ala. 1984)."
460 So.2d at 1340-41. Thus, this court in Braswell relied upon two decisions of this court, Munchus v. Munchus, 412 So.2d 794 (Ala.Civ.App. 1982), and Alford v. Alford, 368 So.2d 295 (Ala.Civ.App. 1979), both of which were decided before the Supreme Court's decision in Ex parteMcLendon. Neither of those earlier decisions articulated the overwhelming-necessity standard as anything other than the appellate-review standard that must be met to overcome the ore tenus presumption. The court then proceeded to articulate a truncated version of the standard explained in more detail in Ex parte McLendon, asserting something that was not stated in Ex parte McLendon, namely, that the Exparte McLendon standard was merely the "overwhelming-necessity" standard "[p]ut another way." Braswell, 460 So.2d at 1341. In so doing, this court for the first time incorrectly treated the overwhelming-necessity standard as a substantive legal standard, incorrectly characterized it as synonymous with the Ex parte McLendon standard, and laid the foundation for its misuse in future cases as an extra-Ex parte McLendon gloss on theEx parte McLendon standard. *Page 1214