PER CURIAM.
Matthew Gallant (“the father”) appeals from a judgment of the Elmore Circuit Court (“the trial court”), which, among other things, denied his petition to modify *392 the physical custody of the four children from his former marriage to Rebecca Gallant (“the mother”), denied his petition to find the mother in contempt, granted the mother’s petition to modify legal custody and visitation, and ordered the father to maintain health insurance for the children’s benefit. We affirm.

Background

The background pertinent to the disposition of this appeal is as follows. The trial court entered a judgment divorcing the parties, and incorporating an agreement of the parties, on August 24, 2009. On May 5, 2012, the father filed a contempt petition alleging that the mother had violated various provisions of the divorce judgment. The mother counterclaimed for an order modifying the legal-custody and visitation provisions of the divorce judgment and, by amendment, for an order modifying the child-support provisions of the judgment and for a finding of contempt against the father for having violated various provisions of the divorce judgment. On November 13, 2012, the father amended his petition to request an order modifying the divorce judgment to award him sole physical custody of the children.
After the case was set for trial, the father filed a written objection to the use of the custody-modification standard enunciated in Ex parte McLendon, 455 So.2d 863 (Ala.1984), on the ground that applying that standard would violate his constitutional rights.[1] The father subsequently filed a motion further arguing that the McLendon standard could not be applied to his custody-modification petition because, he said, that standard had been superseded by statute.
The trial court conducted an ore tenus hearing on February 11 and 12, 2014. On February 28, 2014, the trial court entered a final judgment, refusing to find either party in contempt, applying the McLendon standard, denying the father’s custody-modification petition, granting the mother’s petition to modify legal custody and visitation, and ordering the father to maintain health insurance for the children’s benefit. The father timely moved to alter, amend, or vacate the judgment. The trial court denied the father’s motion on April 12, 2014, after which the father timely appeal to this court.

Issues

The father raises five issues on appeal: (1) that the McLendon standard is unconstitutional, (2) that the McLendon standard has been superseded by statute, (3) that the trial court misinterpreted and misapplied the McLendon standard, (4) that the trial court erred in failing to find the mother in contempt, and (5) that the trial court erred in ordering him to maintain health insurance for the children’s benefit.

Analysis

I. The Constitutionality of the McLendon Standard
The doctrine of res judicata provides that a final judgment entered by a court of competent jurisdiction binds the parties from relitigating the issues decided therein. See Hughes v. Martin, 533 So.2d 188 (Ala.1988). Applied strictly, that doctrine would prevent repeated litigation over the custody of a child; however, as early as 1858, our supreme court recognized that, because of the shifting nature of the needs of a growing child, a court of equity should be allowed to redetermine *393 custody in appropriate cases. See Cornelius v. Cornelius, 31 Ala. 479 (1858). In keeping with the rationale behind the doctrine of res judicata, the supreme court decided that, in order to prevent “oft-repeated, harassing litigation over the custody of infants,” a final child-custody determination, like any other judgment, could not be reopened for reconsideration of the correctness of the judgment. Sparkman v. Sparkman, 217 Ala. 41, 43, 114 So. 580, 581 (1927). It further held, however, that, if a party could satisfactorily prove that circumstances had changed in a significant way since the entry of the earlier judgment, the doctrine of res judicata would not preclude á new determination of child custody based on those' changed circumstances. See Pearce v. Pearce, 136 Ala. 188, 190, 33 So. 883, 884 (1903). Hence, the law became that a prior custody judgment could be modified based only on a material change of circumstances. See Wren v. Stutts, 258 Ala. 421, 422, 63 So.2d 370, 371 (1953).
The law placed the burden “on the party seeking a change of custody to show some change of conditions or other substantial reason” for modifying custody. Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 446 (1947). In Ford v. Ford, 54 Ala.App. 510, 512, 310 So.2d 230, 232 (Civ.App.1974), this court held that,
“[i]n order to support a petition.for modification of custody, the petitioner must produce evidence of a material change of circumstances of the parties occurring since the last prior decree which adversely affects the welfare and best interest of the child to such an extent that a change in custody is warranted or required.”
(Emphasis added.) The supreme court found that the above-emphasized language improperly limited the scope of the inquiry of a trial court considering a custody-modification petition and that the law more correctly provided that “ ‘... the parent will not be permitted to reclaim the custody of the child, unless he can show that a change of the custody will materially promote his child’s welfare.’ ” Ford v. Ford, 293 Ala. 743, 744, 310 So.2d 234, 234 (1975) (quoting Greene, 249 Ala. at 157, 30 So.2d at 445, quoting in turn Stringfellow v. Somerville, 95 Va. 701, 707, 29 S.E. 685, 687(1898)).
The following year, Judge Bradley, writing for this court, summarized the burden of proof in a child-eustody-modification proceeding as follows:
“As applied to child custody, the ‘changed circumstance doctrine’ is' a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child’s healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court’s satisfaction that material changes affecting the child’s welfare since the most recent decree demonstrate that custody should be disturbed to promote the child’s best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.”
Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976). Afterwards, this court formulated other custody-modification standards, see Quintanilla v. George, 340 So.2d 804, 807 (Ala.Civ.App.1976); Roberson v. Roberson, 370 So.2d 1008, 1010 (Ala.Civ.App.1979); and Alford v. Alford, 368 So.2d 295, 297 (Ala.Civ.App.1979), all intended to encapsulate the various decisions on the matter by the supreme court, which this court must follow. See Ala.Code 1975, § 12-3-16.
*394 In Ex parte McLendon, 455 So.2d 863 (Ala.1984), the supreme court settled the law as to the correct burden of proof to be applied in a child-custody-modification, proceeding. In Ex parte McLendon, a divorced .mother sought, to reclaim custody of her child two years after agreeing as part of a divorce settlement that the child’s paternal grandparents, who had been exercising custody of the child even before the divorce proceeding, would exercise custody of the child. 455 So.2d at 864-65. As it had in Ford, supra, the supreme court relied on Greene and Somerville in holding that the mother had to show “not only that she is fít, but also that the change of custody ‘materially promotes’ the child’s best interest and welfare;” 455 So.2d at 866. The supreme court also endorsed in its entirety Judge Bradley’s statement of the law'in Wood, 333 So.2d at 828, and reiterated its holding in Ford that the mother did not' have to prove a change of circumstances “adversely” affecting the welfare of the child. 455 So.2d at 866. The supreme court then reversed this court’s judgment affirming the trial court’s award of custody to the mother on the basis that the mother had failed to prove that a change of custody would materially promote the best interest and welfare of the child, concluding that the evidence disclosed only that the mother and the paternal grandparents could equally care for the child. Id. The supreme court emphasized that the child should not be uprooted from the only: home she had known without evidence demonstrating that -the benefits of the proposed change would overcome the child’s “need for continuity.” Id. In conclusion, the supreme court noted that,
“[although the best interests of- the child are paramount, this is not the standard to be applied in this case. It is important [to] show that the child’s interests are promoted by the change, i.e., that [the mother] produce evidence to overcome the ‘inherently disruptive ef-feet caused by uprooting the child.’”
455 So.2d at 866 (quoting Wood, 333 So.2d at 828).
Since Ex parte McLendon was decided in 1984, the supreme court has reiterated that' the “McLendon standard” applies when deciding whether’ a provision in a divorce judgment awarding one parent sole physical custody of a' child should be modified. See Ex parte Cleghorn, 993 So.2d 462, 467 (Ala.2008) (stating that, “[s]ince Ex parte McLendon, we have repeatedly affirmed that standard as the one that should govern in deciding whether a change in custody is warranted,” and overruling those eases additionally requiring that the evidence must disclose “““an obvious and overwhelming necessity for a change’ ” ’ ” (quoting Bledsoe v. Cleghorn, 993 So.2d 456, 461 (Ala.Civ.App.2007), quoting in turn other cases)). However, the supreme court has clarified that the McLendon standard does not .apply to some other types of custody disputes. See Ex parte Terry, 494 So.2d 628 (Ala.1986) (holding that McLendon standard did not apply in custody contest between natural father and ifíaternal -grdndparents when father did not lose custodial rights to maternal grandparents in divorce judgment); Ex parte Couch, 521 So.2d 987 (Ala.1988) (explaining that best-interest-of-the-child standard, and not McLendon standard, applies when parent seeks modification" of joint-physical-custody provision in judgment); and Ex parte D.J., 645 So.2d 303 (Ala.1994) (pendente lite custody order is not a final determination of custody giving rise’ to McLendon standard). In those custody cases‘in which the supreme court has held that the McLendon standard does not apply, the court has instructed that-the decision whether to modify custody should be based on the best interests of the child. See, e.g., Ex parte Couch, supra; see also *395 N.T. v. P.G., 54 So.3d 918 (Ala.Civ.App.2010) (applying best-interests standard to visitation-modification petition).
A. Separation of Powers
The foregoing brief summary demonstrates that the appellate judiciary of this state crafted the McLendon standard over the course of over 125 years of jurisprudence dealing with modification of the physical-custody provisions of a final judgment. See Ex parte Russell, 19 So.3d 886, 891 (Ala.2009) (Murdock, J., concurring specially) (“the McLendon standard serves merely as device designed by the Court....”). In formulating that standard, the courts did not depend on any legislative- direction, the Alabama Legislature not having enacted any statute specifying the standard for custody-modification actions before Ex parte McLendon was decided. Furthermore, since the pronouncement of the McLendon standard, the Alabama Legislature has not passed any law adopting the McLendon standard. The father contends that the supreme court usurped legislative power by judicially legislating a custody-modification standard not found anywhere in the Alabama Code.
In his brief, the father argues: “No matter how well intentioned a court cannot decide cases based on what it believes the law should, but does not, state.” (Citing Benjamin N. Cardozo, The Nature of the Judicial Process 141. (1921) (“[The judge] is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness.”).) The father then argues that, in Ex parte Christopher, 145 So.3d 60 (Ala.2013), the supreme court held that a court could not create a right to postminority educational support when no statute prescribed that right. From that authority, the father maintains that the supreme court did not have the power to establish the McLendon standard.
Article.Ill, §§ 42 and 43, of the Alabama Constitution of 1901 mandate that the three principal powers of government shall be exercised by separate departments. Article III, § 42, Ala. Const. 1901, provides:
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
Article III, § 43, Ala. Const.1901, provides:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executivé ánd judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legisla! five and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
The United States Constitution separates governmental power into three distinct branches — the legislative, the executive, and the judicial — none of which may exercise power belonging exclusively to one of the others. See Ex parte Jenkins, 723 So.2d 649, 654 (Ala.1998). Pursuant to the separation-of-powers doctrine, the judiciary may not exercise the legislative power, but may exercise only its own judicial power* Id.
“[T]he core judicial power is the power to declare finally the rights of the parties, in a particular case or controversy, based on the law at the time the judgment be *396 comes final.” Ex parte Jenkins, 723 So.2d at 656. When the legislature has not created a law to regulate a particular subject, “[t]he common law of England ... shall ... be the rule of decisions” for the courts. Ala.Code 1975, § 1-3-1. The “common law” includes the equitable rules arid practices of English chancery courts, see Cox v. Dunn, 243 Ala. 176, 9 So.2d 1 (1942), the courts that assumed the power to decide child-custody cases in England. See Hansford v. Hansford, 10 Ala. 561 (1849). In Cornelius, supra, the supreme court relied on principles derived from English chancery decisions when first asserting the authority to leave open a final child-custody determination for modification based on changed circumstances. See 31 Ala. at 482 (citing, among other authorities, Codd v. Codd, 2 Johns Ch. 141 (N.Y.Ch.1816)); see also Hayes v. Hayes, 192 Ala. 280, 284, 68 So. 351, 352 (1915) (“The authorities also recognize the power of the chancery court to modify any order or decree concerning the custody of the infant, as in the sound discretion of the court may seem to be for the best interests of the child.”). In developing that doctrine, the appellate courts relied primarily on Somerville, supra, which itself borrowed language directly from the syllabus of Green v. Campbell, 35 W.Va. 698, 14 S.E. 212 (1891), a case in which the West Virginia Supreme Court denied a petition for a writ of habeas corpus filed by a father on the ground that the father had failed to show how giving him custody of a child would materially promote the best interests of the child. The authority to deny the petition for the welfare of the child derived directly from precedent established a century earlier in English chancery courts. See Sarah Abramowicz, English Custody Law, 1660-1839: The Origins of Judicial Intervention in Paternal Custody, 99 Colum. L.Rev. 1344, 1348 n. 17 (June 1999) (citing Rex v. Delaval, 97 Eng. Rep. 913 (K.B.1763)).
Appellate courts clearly exercise judicial power when expounding on, and developing, the common law. See San Carlos Apache Tribe v. Superior Court in and for the Cnty. of Maricopa, 193 Ariz. 195, 207, 972 P.2d 179, 191 (1999) (“The power to define' existing law in adjudicating disputes rests exclusively within the judicial branch.”). A court does not encroach upon the legislative function by revising or adapting a rule of law of judicial origin. See Rothberg v. Olenik, 128 Vt. 295, 262 A.2d 461 (1970). Whatever statement the supreme court made regarding the separation-of-powers doctrine in Ex parte Christopher, supra, it did not hold that the judiciary exceeds its authority when it declares the principles of the common law. In adopting the McLendon standard, the supreme court only restated the common law as- already contained in various appellate opinions. That decision may not be seriously challenged as violating the separation-of-powers doctrine.
B. Equal Protection
Section 1 of the Fourteenth Amendment to the United States Constitution states, in pertinent part:
“No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within- its jurisdiction the equal protection of the laws,”
The Equal Protection Clause essentially directs that the states shall treat all persons similarly situated alike. See City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).
The father initially complains that the McLendon standard unfairly burdens *397 the noncustodial parent although that parent shares the same constitutional rights as the custodial parent. In a custody-modification case, a noncustodial parent is not similarly situated to a custodial parent. Although natural parents share fundamental rights to the custody of their children, see Ex parte E.R.G., 73 So.3d 634 (Ala.2011), which fundamental rights remain intact even after a divorce, see McQuinn v. McQuinn, 866 So.2d 570, 572 (Ala.Civ.App.2003), those rights have been adjusted by a prior judgment, the effect of which has long been established in Alabama law:
“True, we have often declared that the question of rightful custody of the child is never res judicata. But we have also stated that it does not follow that a former decree of a court of competent jurisdiction awarding the custody to one of two contesting parties is to be accorded no weight in later proceedings. Judicial findings upon the same, or substantially the same, conditions are presumed correct. The burden is on the party seeking a change of custody to show some change of conditions or other substantial reason therefor.”
Greene, 249 Ala. at 157, 30 So.2d at 445. A noncustodial parent cannot demand, by invoking the phrase “equal protection of the law,” that a prior judgment be disregarded, particularly when the parties have acted on the prior judgment “ ‘to the manifest interest and welfare of the child.’ ” Greene, 249 Ala. at 157, 30 So.2d at 445 (quoting Somerville, 95 Va. at 707, 29 S.E. at 687). The Equal Protection Clause does not require a court to pretend that the parties occupy the same position as they did before the divorce judgment so as to render the intervening adjudication meaningless. We agree with the father that “[following a custody determination a fit non-custodial parent is ,.. held to a different standard than a custodial parent by the courts,” but we reject his contention that the differing treatment offends the Equal Protection Clause.
We also do not agree that the Equal Protection Clause requires that Alabama courts apply the same standard as used in jojnt-eustody-modification proceedings, as the father argues. “To justify a modification of a preexisting judgment awarding [joint physical] custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ‘ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested.” Ex parte Blackstock, 47 So.3d 801, 805 (Ala.2009) (quoting Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005), quoting in turn Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)). Unlike the McLendon standard, the joint-physieal-custody-modification standard does not require a parent sharing joint physical custody with another parent to prove that the modification would materially promote the best interests of the child or that the benefits from the change in custody would outweigh its disruptive effects. ' Those additional factors arise from the peculiar nature of sole-physical-custody-modification proceedings in which a noncustodian seeks a judgment transferring physical custody of a child from his or her sole custodian in order to establish a new sole custodianship. “ ‘[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.’” Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (quoting Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940)). By addressing concerns more prevalent in sole-custody-modification proceedings, the McLendon standard does not arbitrarily create an artificial classification but permissibly es *398 tablishes a different legal rule responsive to a different legal problem.
C. Due Process
As noted earlier; the Fourteenth Amendment to the United States Constitution guarantees that a state shall not “deprive any person of life, liberty, or property, without due process of law,...” A natural father has a liberty interest in the custody of his ■ child that the state cannot infringe upon without due process of law. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The Fourteenth Amendment provides that a state may infringe on the custodial rights of a parent only through constitutionally adequate procedures. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A state violates the guarantee of substantive due process when its actions impair a liberty interest without sufficient justification. See County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A state violates the guarantee of procedural due process when it impairs a liberty interest without fair proceedings,[2] See Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).
In his brief to this court, the father insists that the state cannot “abrogate” his fundamental rights to custody of his children through application of the McLendon standard. By consenting in the parties’ settlement agreement that was incorporated into their divorce judgment to the mother’s assuming the sole physical custodianship of the children, the father voluntarily relinquished his custodial rights. The trial court, by applying the McLendon standard, did not deprive the father of custodial rights he had previously surrendered. The trial court merely applied the law to prevent the father from regaining custodial rights to the exclusion of the mother. Undeniably, the father has a substantive right to petition to .modify the settlement agreement incorporated into the parties’ divorce judgment, but he has not cited any legal authority providing him a fundamental or constitutional right to have that petition granted.
Throughout these proceedings, the father has failed to acknowledge that the mother has at least equal fundamental and constitutional rights to the custody and control of the children. In child-custody cases between two parents, “the rights of both the mother and the father are involved and neither parent’s rights outweigh the other’s.” J.S. v. D.W., 835 So.2d 174, 184 (Ala.Civ.App.2001) (plurality opinion), overruled on other grounds, Ex parte D.W., 835 So.2d 186 (Ala.2002). In Morgan v. Morgan, 964 So.2d 24, 31 (Ala.Civ.App.2007), this court held that
“parents sharing joint legal custody without modification have equal constitutional rights to the care, custody, and control of the child and that, therefore, as a general rule, a court may apply the best-interests standard in a custody dispute between .such parents .without implicating the Fourteenth Amendment due-process rights of either parent.”
(Emphasis added.) As noted above, the custodial rights of the parents were already adjusted by the agreement of the parties incorporated in the divorce judgment. That adjustment may not have diluted the constitutional rights of the fa *399 ther, but it certainly did not enlarge them such that the trial court was obligated to modify the divorce judgment in order to protect the fundamental .rights of the father and to guarantee him at’ least equal time with the children.[3]
By using the McLendon standard to decide a modification dispute, a trial court does not thereby impermissibly substitute its judgment for that of a fit parent, as happens, for example, when a trial court overrides the determination of a married couple that their children should not visit with their grandparents. See Ex parte E.R.G., supra. The trial court only settles a dispute between persons with arguably equal constitutional rights using neutral factors designed to protect the interests of the children. See Morgan, supra. Nothing in- the constitutional analysis provided to this court by the father requires the state to refrain from deciding custody disputes pitting fit parents against one another. If nothing else, the state’s interest in peaceably resolving controversies through its judicial system compels the court to arbitrate the dispute. See Pierce v. State, 292 Ala. 473, 296 So.2d 218 (1974) (recognizing that one function of the legal order is to adjust controversies according to statewide legal standards),
The McLendon standard allows á transfer of' custody only after a sifting inquiry to assure that the stability and other interests of the child, as well as the custodial rights of the opposing parent, have been properly considered. By giving due consideration to those interests, the McLendon standard does not theréby impair the liberty interest of the noncustodial parent. A noncustodial parent may, and often does, regain custody, of, a child in cases in which the McLendon standard applies. , The McLendon standard does not require, or. even predict, any particular outcome, but only because each modification case must be decided on its own particular circumstances and not because the standard authorizes arbitrary governmental action by-trial eourts. -Hence, we conclude that the McLendon standard does not violate the due-process rights of noncustodial parents like the father.'
II. Custody Legislation and the McLendon Standard
A. The Joint-Custody Law
Alabama Code 1975, § 30-3-150, provides, in pertinent part:
“It is the policy of this state to assure that 'minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage.”
The father contends that § 3Ó-3-150, effective on January 1, 1997, see Ala. Acts 1996, Act No. 96-520, § 10, supersedes the McLendon standard. We disagree. Section 30-3-150 i's the first section of Ala. Code 1975, Title 30, Chapter 3, Article 7, an articlé dealing with joint custody. The last section of that article, Ala.Code 1975, § 30-3-157, specifically provides: “This article shall not be construed as grounds for modificatibn of an existing order. This article shall not be construed as affecting the standard applicable to a subsequent modification.” See also Cochran v. Cochran, 5 So.3d 1220, 1232 n. 6 (Ala.2008) *400 (Murdock, J., concurring in the judgment of reversal, but dissenting as to the rationale and the instructions on remand) (“Joint physical custody is especially favored in Alabama, see Ala.Code 1975, § 30-3-150 et seq., though the joint-custody statutes do not alter the applicable standard for modifying custody. Ala.Code 1975, § 30-3-157.”).
B. Alabama Parent-Child Relationship Protection Act
Alabama Code 1975, § 30-3-160 et seq., known as the “Alabama Parent-Child Relationship Protection Act” (“the Act”), “promotes the general philosophy in this state that children need both parents, even after a divorce, established in Section 30-3-150.” Ala.Code 1975, § 30-3-160. The legislature did not abolish the McLendon standard when it adopted the Act in 2003. See Ala. Acts 2003, Act No. 2003-364.
“As this court has recently held, the application of the Alabama Parent-Child Relationship Protection Act[, Ala. Code 1975, § 30-3-160 et seq.,] not only does not preclude the application of the Ex parte McLendon [, 455 So.2d 863 (Ala.1989),] standard to a request for modification "of custody based, in part, on a parent’s desire to relocate, but, in fact, it requires' that the Ex parte McLendon standard, in addition to the factors outlined in the Act, be considered by a trial court faced with the issue after the trial court has made the initial determination regarding whether the child’s best interests would be served by the relocation. Clements v. Clements, 906 So.2d 952, 957-58 (Ala.Civ.App.2005).”
T.B. v. C.D.L., 910 So.2d 794, 796 (Ala.Civ.App.2005). In Toler v. Toler, 947 So.2d 416, 422-25 (Ala.Civ.App.2006) (Murdock, J., concurring specially), then Judge Mur-dock opined that the Act did supplant the McLendon standard in eases in which a noncustodial parent petitions for a modification of custody based on the proposed relocation of the custodial parent and child;[4] however, a majority of this court did not agree with then Judge Murdock’s point of view, and the holding in Clements v. Clements, 906 So.2d 952 (Ala.Civ.App.2005), remains undisturbed.
The McLendon standard does not conflict with either the language in § 30-3-160, which echoes § 30-3-150, or any other part of the Act. Without explanation, the father argues that the McLen-don standard discourages shared parenting and “promotes limited contact between children and their fit, caring parents.” The McLendon standard does not apply in initial custody determinations when the parties and the trial court are establishing a parenting plan for children. The McLendon standard further does not govern legal-custody or visitation issues. See Harris v. Harris, 775 So.2d 213, 215 (Ala.Civ.App.1999); and Ex parte Dean, 137 So.3d 341, 342 n. 2 (Ala.Civ.App.2013). In proceedings in which the McLendon standard does apply, it governs only whether physical custody should be altered, not discouraging or preventing ,a trial court from providing for shared parenting or from awarding liberal visitation. Perceiving no “fair repugnance” between the Act and the McLendon standard, see A.W. Fin. Servs., S.A. v. Empire Res., Inc., 981 *401 A.2d 1114, 1124 (Del.2009) (holding that a statute may impliedly repeal the common law when there is a “fair repugnance” between the statute and the common law), we reject the father’s argument that the Act has superseded the McLendon standard.
III. The Application of the ' McLendon Standard
A. Modification of Physical Custody
Having .determined that the McLendon standard is constitutional and that it has not been superseded by statute, we next decide whether the trial court correctly interpreted and applied that standard. Because those issues involve purely questions of law, we use a de novo standard of review. See Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala.2010).
During the trial, as the father’s attorney was questioning the mother about the potential psychological effects a change of custody might have on the children, the trial court interrupted the mother as she was about to answer to interject:
“[The Court]: No. The Supreme Court has answered that question.
“[Counsel for the father]: I’m just asking in this particular case, has it happened.
“[The Court]: The Supreme Court says that there is an inherent disruptive ef.fect. As a matter of law, there is an inherent disruptive effect caused by the change in custody....”
The father argues that the question whether a change of custody will have a disruptive effect is not a question of law, but of fact.
The McLendon standard provides that a petitioner must prove that the “ ‘positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child,’” 455 So.2d at 865 (quoting Wood, 333 So.2d at 828) (emphasis added). From that language, we believe the supreme court meant that one inflexible attribute of a change of sole physical custody is disruption of the child’s ordinary living arrangements. Thus, we agree with the trial court that the supreme court has decided, as a matter of law, that a change of sole physical custody will automatically cause some disruption to the child. However, we agree with the father that the kind and degree of disruption, as well as the effect of that disruption on the child, all remain relevant questions of fact that a trial court should consider in deciding whether to modify sole physical custody under the McLendon standard. We do not believe that the supreme court intended that, as a matter of law, all changes of custody cause equally disruptive effects regardless of the particular circumstances at issue. When weighing the McLendon factors, a trial court must measure the good to be achieved by a change of custody against, the actual, not presumed, disruptive effects from that change. See Dilorio v. Long, 839 So.2d 650, 655 (Ala.Civ.App.2001) (Per Murdock, J., with Pittman, J., concurring and Yates, P.J., and Crawley and Thompson, JJ., concurring in the result). As experience has taught, not every case falls neatly within the paradigm of the McLendon decision, so each factor should be considered in the light of the variable evidence before the trial court to assure that the case is decided on its own individual merits.
Based on the foregoing analysis, we hold that the trial court should not have precluded the father from introducing any evidence relevant to determining the nature, degree, and effect of the disruption to the children from a change of custody. However, to the extent the trial court may have limited the scope of the evidence, we *402 cannot reverse its judgment. In order to preserve, for appeal an error in excluding evidence, a party must make a proffer of that evidence unless, under the circumstances, it is' clear what that evidence would have been. See Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). In this case, the father did not make an offer 'of proof, and we are left to speculate as to what additional evidence the father could have presented in support of his claim that changing custody to him would have only minimally disrupted the lives of the children.
The father further argues that the trial court-misconstrued that part of the' McLendon standard relating 'to the “uprooting [of]' the child.” The father maintains that a trial court applying the McLendon standard should consider only the effects of uprooting the child from his or her environment, not the effects of uprooting the child from the custody of his current custodial parent. We acknowledge that some cases have implied' that the terms “disruption” and ‘ “uprooting” refer to the removal of the child from his or her community. See, e.g., Harris v. Harris, 775 So.2d 213, 215 (Ala.Civ.App.1999). However,' in Ex parte Couch, supra, the supreme court explained that a child,could, also bé considered “uprooted” merely by changing custodians, even if the child' remained in the same area. 521 So.2d at 990 (“[B]y being placed with their father, [the children] were ‘uprooted’ in the sense that they moved in with their father, but they did not have the problems of adjusting to a new city, school, and church, to new activities, and to a stepparent.”). Consistent with our. above analysis, we conclude that the McLendon standard. requires a trial court to consider any form of disruption that a custody modification would cause when-making its determination, not only the change in the environment of the child at issue.
In concentrating bn the disruption that could be caused by removing the children from the custody of the mother, the trial court did not even indirectly apply any presumption that a mother is a better custodian than a father for a child of tender years. The supreme court abolished the tender-years presumption in Ex parte Devine, 398 So.2d 686 (Ala.1981). We presume that the trial court knew that the tender-years presumption has been abolished and that it did not apply that presumption. See Brewer v. Hatcher Limousine Serv., Inc., 708 So.2d 163, 166 (Ala.Civ.App.1997) (“When an issue is presented to the trial court, ... the trial court is presumed to know and apply the law with respect to that issue.”). The father has not directed this court to any- part of the record that indicates that the trial court applied the tender-years presumption.
The trial court ultimately decided that the mother should maintain physical custody of the children. Besides the legal arguments advanced above, the father generally asserts that the trial court erred in weighing the evidence in favor of the mother. However, our standard of review prevents us from reversing the trial court’s judgment when the trial court makes a determination based on disputed evidence in an ore tenus proceeding. Under the McLendon standard, the trial court had sufficient evidence before it to conclude that the physical custody of the children should not be altered. We cannot reverse the judgment on the ground that some of the conflicting evidence suggested that the children would benefit from a change of custody to the father, See, e.g., Hermsmeier v. McCoy, 591 So.2d 508 (Ala.Civ.App.1991).
*403 B. Modification of Legal Custody
In its' judgment, the trial court altéred the previous joint-legal-custody arrangement, pursuant to which each parent was given equal authority and responsibility over major decisions affecting the children, by providing as follows:
“The parties are admonished.-by the Court that Joint Legal Custody of the children establishes in .each party coequal responsibility for reaching decisions regarding major areas that touch upon the health, education and/or welfare of these children. The Father is to be given the opportunity to provide meaningful input into those areas and shall be entitled to receive and/or inspect any and all records which contain information relative to the children. Such records may include, but are hot limited to, medical records, education records and report cards. He shall receive reasonable notice of, and opportunity to attend and/or participate in, any and all activities in which the child(ren) is/are involved.
“In the event the parties are unable to reach a consensus regarding any particular . issue requiring. a decision that touches upon the health, education and/or welfare of the children, or any one of them, then under such circumstances the Mother is vested, as the physical custodian of the children, with the final authority to make such determinations and or decisions. In the event the Mother, in the exercise of her discretion, should make a decision upon which there is not mutual agreement or .consensus, she shall provide to the- Fa-, ther, within a reasonable period of time, a written explanation for her decision together with the information she has considered and the reasons for the con-elusion(s) reached.”
(Emphasis in original.) The father maintains that “[the mother] is given complete discretion with regard to all legal decision making for-, the children” and that “[the mother] is now free to ■ completely disregard any input from [the] Father regarding the rearing and raising of his children.”
A reading of the modified judgment indicates that the father is entitled to “meaningful- input” into major decisions regarding -the health, education, and welfare of the children but that the mother shall make the final decision in the event of a disagreement between the parties. Ala-, bama Code -1975, § 30-3-151(2), defines “joint legal custody” as follows:
“Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not lim- ■ ■ ited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power, to make certain decisions while, both parents retain equal rights and responsibilities for other decisions.”
We must agree with the father that the judgment, as modified, does not give him final authority over any aspect of the children’s lives, so the mother must now be considered the sole legal custodian of the children, subject only to the father’s limited rights under- the terms of the judgment.
We do not agree, however, that the trial court misapplied the McLen-don standard in modifying, legal custody. Although , the trial court placed the language modifying , the legal-custody provisions of the divorce judgment in the same numbered paragraph as its discussion of the- father’s .petition to modify custody, nowhere- did the trial court state that it had relied on the McLendon standard when modifying legal custody., In her counterclaim, the mother requested that the trial court modify legal custody, which *404 was an issue the trial court had authority and jurisdiction to decide. See Ala.Code 1975, § 30-3-152(4). Upon determining that there has been a material change of circumstances, “[t]o modify legal custody, the trial court need only find that the best interests of the child are served by the modification.” Harris, 775 So.2d at 215. The trial court apparently concluded, and substantial evidence supports that conclusion, that changing legal custody would serve the best interests of the children. Its judgment is not internally inconsistent in finding that the father failed to satisfy the McLendon standard and, then, modifying legal custody at the request of the mother.
C. Modification of Visitation
For similar reasons, we reject the father’s contention that the trial court erred in modifying the visitation provisions of the divorce judgment. The judgment expressly acknowledged that the mother had sought a modification of visitation in her counterclaim. The father only tangentially argues any error as to the visitation modification, and the only error claimed concerns a misapplication of the McLendon standard. However, the trial court did not apply the McLendon standard when modifying the visitation aspects of the divorce judgment; hence, the father has not proven any reversible error as to this issue.
IV. Contempt
The father next claims that the trial court erred in failing to find the mother in contempt when, according to the father, the undisputed evidence proved that she had committed several contemptuous acts, most supposedly in violation of the divorce judgment. However, the father has failed to direct this court to any specific order of the trial court or any provisions of the divorce judgment that the mother may have violated by her conduct. See Rule 70A, Ala. R. Civ. P. (defining contempt to include willful violation of court order). It is not the duty of this court to search the record to support the father’s contention. See Roberts v. NASCO Equip. Co., 986 So.2d 379 (Ala.2007). The father further maintains that the mother tampered with witnesses by misrepresenting to the trial court that two of the children had been diagnosed with mononucleosis. However, the father has not cited to this court any legal authority to support his argument that the mother committed contempt by her actions. See Rule 28(a)(10), Ala. R.App. P. Thus, we have no basis for reversing the judgment of the trial court for failing to hold the mother in contempt.
V. Health Insurance
Finally, the father contends that the trial court erred in ordering him to maintain health insurance on the children. The father notes that he is unable to provide insurance through his employer, but he does not craft any legal argument supporting the proposition that a trial court errs in ordering a party to maintain health insurance in those circumstances, so we do not address that point. See Rule 28(a)(10). The father also asserts that the trial court granted the mother relief that was not pleaded or requested. In her amended counterclaim, the mother requested that the trial court modify the provisions of the divorce judgment relating to health insurance. The record also shows that the father’s attorney questioned the mother at length about the health-insurance coverage for the children. Additionally, the father injected the issue of the children’s lack of health insurance in his pretrial brief, to which he appended his affidavit complaining of the lack of health-insurance coverage for the children. “[I]n proceedings involving the custody and welfare of children, mere legal niceties are not favored in proceedings or pleadings, and *405 the court is not bound by any strict rules of pleadings or procedure.” Tucker v. Tucker, 280 Ala. 608, 611, 196 So.2d 724, 726 (1967). We find no error in the provision of the judgment requiring the father to maintain health insurance on the children.

Conclusion

In summary, we find that the McLendon standard is not unconstitutional, that the McLendon standard has not been superseded by statute, and that the trial court did not misapply the McLendon standard when modifying the legal-custody and visitation provisions of the divorce judgment. We further conclude that the trial court did not err in failing to find the mother in contempt and that the trial court did not err in ordering the father to maintain health insurance for the benefit of the children. Regarding the modification of the physical-custody provision of the divorce judgment, • we hold that the trial court did not commit reversible error in interpreting and applying the McLendon standard. As a result, we affirm the judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
DONALDSON, J., concurs specially,

. The father notified the attorney general of his constitutional challenge. The attorney general acknowledged service of the notice and filed an acceptance and a waiver of the right to be served or be heard,

. The father argues that the same evidentiary standards applicable in dependency and termination-of-parental-rights proceedings should be applied in custody-modification cases. We do not address that argument, which is made without citation to any legal authority, see Rule 28(a)(10), Ala. R.App. P., because the father did not raise that issue to the trial court. See Lindley v. Lindley, 531 So.2d 925, 926 (Ala.Civ.App.1988).

. To the extent that the father contends that the McLendon standard discourages increased associations between children and noncustodial parents, we note that the McLendon stan■dard governs only the question of whether a sole-physical-custody determination should be modified and does not pertain to petitions to increase visitation rights.

. We note that several opinions have held that a custodial parent petitioning to relocate with a child does not have to meet the McLendon standard. See, e.g., Daugherty v. Daugherty, 993 So.2d 8, 13-14 (Ala.Civ.App.2008); Scarborough v. Scarborough, 54 So.3d 929, 940 (Ala.Civ.App.2010). Nothing in our discussion is intended to override those cases, which do not decide the issue whether a parent objecting to relocation must meet the McLendon standard as well as the factors established in the Act in order to gain custody of the child.