REL: March 3, 2023

Notice: This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

## CL-2022-0629

_____

**Timothy Michalak**

**v.**

**Jessica Peterson**

**Appeal from Calhoun Circuit Court**
**(DR-19-4.01)**

PER CURIAM.

Timothy Michalak ("the father") appeals from a judgment entered by the Calhoun Circuit Court ("the trial court") in favor of Jessica Peterson ("the mother"), denying his petition for a modification of custody and modifying his visitation schedule. We affirm the judgment.

The parties' child was born in June 2016, apparently when the father resided in the State of Washington and the mother resided in

California. Eventually, the mother and the child moved to Oxford, Alabama; the father remained in Washington. At some point, a child-support order was entered in a Washington jurisdiction, presumably by a Washington court, based on a petition filed by the Washington Department of Social and Health Services. The Washington child-support order required the father to pay $817 per month to the mother as child support. Also, at some point, the mother commenced a custody proceeding in the trial court. Pursuant to a judgment entered by the trial court in February 2019 ("the February 2019 judgment") the parties were awarded joint legal custody of the child, and the wife was given primary decision-making authority. The February 2019 judgment also awarded the mother "sole physical custody" of the child and awarded the father visitation (referred to in the judgment as "secondary placement privileges") "at all reasonable times and under reasonable circumstances agreed to in advance" by the parties, provided, however, that the father was to have minimum visitation of an identified weekend or extended weekend in most months; approximately nine days for each spring and fall break of the child's school (subject to some adjustment to accommodate the mother's custody during Thanksgiving of even-

2

numbered years); for four days for Thanksgiving in odd-numbered years; for all but three weeks of the summer break of the child's school; and from December 26th each year until the resumption of the child's school. The father also had a right to visit with the child any weekend that the father was in Alabama, provided that he gave the mother 10 days' advance notice of his intent to exercise that right. The February 2019 judgment also stated that the provisions of the Washington child-support order "remain[ed] in full force and effect."[1]

In March 2021, the father filed in the trial court a petition for a modification of physical custody as to the parties' child. The father alleged that he recently had purchased a home in Oxford and was relocating there. He requested that physical custody be changed to joint physical custody and that the child be in his care at least half of the time. The father also requested a reduction of his child-support obligation. The mother filed an answer denying the allegations in the father's

---

[1]The record on appeal contains no information that might cause this court to question whether jurisdiction was improper in either the Washington child-support proceeding or the initial custody proceeding in the trial court. Accordingly, we must assume that no jurisdictional problems exist that might affect the Washington child-support order or the February 2019 judgment. See Hummer v. Loftis, 276 So. 3d 215, 221 (Ala. Civ. App. 2018).

modification petition. The mother also filed a counterclaim requesting that the trial court hold the father in contempt because, according to her, he had failed to pay child support as required by the Washington child-support order.

After ore tenus proceedings, the trial court entered a judgment on February 18, 2022 ("the February 2022 judgment"), denying the father's modification petition as to custody on the ground that he had failed to meet his burden under Ex parte McLendon, 455 So. 3d 863 (Ala. 1984). The February 2022 judgment also modified the father's visitation, an issue that had been tried by implied consent, see discussion, infra, and denied his request for a modification of his child-support obligation based on the trial court's determination that it lacked jurisdiction to modify the Washington child-support order, see Ala. Code 1975, § 30-3D-609 et seq. Similarly, the February 2022 judgment denied the mother's counterclaim for contempt for nonpayment of child support on the ground that the trial court lacked jurisdiction to enforce the Washington child-support order. See Ala. Code 1975, § 30-3D-601 et seq.[2]

---

[2]It does not appear that either party registered the Washington child-support order in Alabama. The mother has not appealed, and the

Regarding the father's visitation, the February 2022 judgment stated that the father was to have visitation with the child as the parties could agree but that, at a minimum, he was to have visitation every other weekend from the end of the school day on Friday until the start of the school day on Monday; every other Wednesday night from the end of the school day until the start of school on Thursday; on specified holidays, as well as the spring and fall break of the child's school, with times alternating between the parties; and on alternating weeks during the recess of the child's school in the summer. The February 2022 judgment also mistakenly awarded the father visitation on Mother's Day and the mother visitation on Father's Day each year.

The father timely filed a postjudgment motion. On April 26, 2022, the trial court entered an order denying the father's postjudgment motion but amending the February 2022 judgment to correct the mistake as to which party would have custody on Mother's Day and Father's Day

---

father makes no argument that the trial court erred by failing to modify his child-support obligation.

(based on the mother's oral motion at the postjudgment-motion hearing).[3]

The father timely filed a notice of appeal to this court.

> "'On appeal, this court presumes the correctness of a judgment based upon evidence presented ore tenus. Ex parte Bryowsky, 676 So. 2d 1322, 1324 (Ala. 1996).
>
>> '"'[W]e will not reverse [the judgment] unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.'"
>
> "'Ex parte Perkins, 646 So. 2d 46, 47 (Ala. 1994) (quoting Phillips v. Phillips, 622 So. 2d 410, 412 (Ala. Civ. App. 1993)). However, this court reviews the interpretation and application of the [standard described in Ex parte McLendon, 455 So. 2d 863 (Ala. 1984)], which involve pure questions of law, de novo. Gallant v. Gallant, 184 So. 3d 387, 401 (Ala. Civ. App. 2014).'"

Weaver v. Jefferson, 242 So. 3d 1014, 1016-17 (Ala. Civ. App. 2017) (quoting K.U. v. J.C., 196 So. 3d 265, 268-69 (Ala. Civ. App. 2015)).

The father argues that the trial court erred by requiring him to satisfy the standard set forth in Ex parte McLendon, which requires a

---

[3]The father also filed a motion to consolidate the present case and a pending protection-from-abuse case that the mother had filed. The trial court denied that motion, which was apparently based on an alleged incident between the father and the mother that had occurred after the entry of the February 2022 judgment.

noncustodial parent seeking to modify a previous custody award of sole physical custody to demonstrate that a material change in circumstances has occurred such that a change of custody would materially promote the child's best interests and that the benefits of the change would offset the disruptive effect of the change in custody. Id. at 866. According to the father, the trial court should have applied the standard discussed in Ex parte Couch, 521 So. 2d 987 (Ala. 1988) (discussing the best-interest-of-the-child standard), because, he says, the parties "enjoyed equal or nearly equal parenting time" under the February 2019 judgment.

In Ex parte Couch, the supreme court concluded that the trial court in that case had erred by applying the standard described in Ex parte McLendon when the original custody judgment had awarded the parties "joint legal and shared physical custody" and the children were going to be "moved and affected" regardless of who was awarded custody because Carol Couch, who had been the children's primary custodian based on the parties' agreement after the entry of the custody judgment, was moving from Alabama to New York. The father attempts to analogize this case to Ex parte Couch, contending that the "parenting schedule" in the February 2019 judgment granted him nearly equal parenting time with

7

the mother and that, after the entry of the February 2019 judgment, he "ha[d] exercised his parenting time under [that judgment] to the fullest extent possible which resulted in him having the child in his care 181 days of the prior calendar year," including every other weekend during that calendar year, in addition to his other periods of extended visitation described in the February 2019 judgment. It does not appear that the father had exercised such extensive visitation before he moved to Alabama.

The facts of the present case are not substantially analogous to the facts in Ex parte Couch, and the father's argument that the trial court erred by applying the standard described in Ex parte McLendon is without merit. The February 2019 judgment unequivocally awarded the mother sole physical custody of the child; the father pleaded as much in his petition for modification and repeatedly testified at trial as to the "visitation award" to him in the February 2019 judgment; he likewise admitted at trial that the February 2019 judgment had awarded the mother sole physical custody of the child; and the father's parenting time under the February 2019 judgment was not "nearly equal" to that of the mother until after he moved to Alabama and was able to exercise his right

to visitation on additional weekends, a circumstance that the trial court noted had not been anticipated when the February 2019 judgment was entered.

The father cites several cases in addition to Ex parte Couch in an attempt to buttress his argument. However, like Ex parte Couch, those cases are distinguishable from the present case and we find no reason to further discuss this issue. See Williams v. Williams, 243 So. 3d 826, 828 (Ala. Civ. App. 2017) (holding that the best-interest-of-the-child standard applied when, under previous custody judgment, the parties "were awarded joint legal and physical custody of the parties' children" and were to exercise their respective physical-custody rights on alternating weeks); E.F.B. v. L.S.T., 157 So. 3d 917, 923 (Ala. Civ. App. 2014) (holding that the best-interest-of-the-child standard applied when, under previous custody judgment, the parties had been awarded "joint physical custody" and had exercised custody over the children for an approximately equal amount of time); New v. McCullar, 955 So. 2d 431, 435-436 (Ala. Civ. App. 2006) (holding that the best-interest-of-the-child standard applied when previous custody judgment had awarded the parties joint physical custody in accord with Ala. Code 1975, § 30-3-151(3), but then included

9

some provisions that were inconsistent with such an award, which would not be construed against the joint-physical-custody award under the facts presented); <u>Rehfeld v. Roth</u>, 885 So. 2d 791, 795 (Ala. Civ. App. 2004) (holding that the best-interest-of-the-child standard applied when previous custody judgment did not "expressly 'prefer' either parent by providing that one parent will be the primary physical custodian or the primary residential parent, or will otherwise have custodial priority" and "incorporated the parties' agreement that the mother and the father will share 'joint custody and control of the parties' minor children' "); <u>Reuter v. Neese</u>, 586 So. 2d 232, 233 (Ala. Civ. App. 1991) (noting that the best-interest-of-the-child standard applied when the parties' custody agreement, which had been incorporated into the divorce judgment, provided that, as to the child at issue, the parties would have "shared joint custody," although the child "was to reside with the mother during the school year and with the father during the summer months").[4] Based

---

[4]In regard to his argument as to <u>Ex parte Couch</u>, the father also argues that the standard described in <u>Ex parte McLendon</u> is a rule of repose and should not have been applied because doing so "will cause a significant disruption to the child." However, the father discusses no factual basis to support that argument, and we will not consider it. Rule 28(a)(10), Ala. R. App. P.; <u>see also</u> <u>Littlepage v. Littlepage</u>, 217 So. 3d

on the foregoing, we conclude that the trial court did not err by applying the standard described in <u>Ex parte McLendon</u>.

The father next argues that the trial court erred by modifying his visitation, or, as he contends, awarding the mother additional parenting time with the child. According to the father, the trial court erred because the mother had not filed a petition requesting such relief. The father cites <u>M.A.J. v. S.B.</u>, 73 So. 3d 1287 (Ala. Civ. App. 2011), in support of his argument. However, in <u>M.A.J.</u>, "[t]he evidence adduced at trial was not such that it would have clearly alerted the father that the maternal grandmother was seeking a termination of the joint-custody arrangement and requesting sole custody of the child." <u>M.A.J. v. S.B.</u>, 73 So. 3d 1287, 1289 (Ala. Civ. App. 2011). By contrast, in the present case,

_____

928, 934 (Ala. Civ. App. 2016) (explaining that arguments on appeal that do not include the required factual and legal discussions are waived).

We note that, based on the father's citations and parentheticals, he appears to be implying that the mother was moving to a different state. In his petition for a modification of custody, he had objected to the mother's purported intention to move to Colorado. However, in her answer, the mother denied that she had any intent of relocating to Colorado; she alleged that she had merely been scheduled to work out of town for a few weeks. The mother testified to the same effect at trial, and the father admitted at trial that he knew the mother was not intending to permanently relocate to Colorado when he had referenced her relocation in his modification petition.

11

the father testified at trial that he wanted to be awarded equal time with the child and that he did not want the trial court to reduce his time with the child, which itself belies any contention that he was unaware that a reduction in time was a possible outcome of the proceeding. Also, the mother testified that, based on the father's relocation and her concerns for stability for the child, she wanted the court to award the father visitation every other weekend and for half of the summer rather than to maintain the visitation schedule from the February 2019 judgment. The father did not object to her testimony or object that she had not filed a petition requesting a modification of his visitation. In fact, the father's counsel cross-examined the mother as to why she wanted to "cut [his visitation] way back by this standard visitation schedule you're asking the Court to enter" from the visitation they had agreed to while the custody-modification proceeding was pending. The mother stated that the child needed to have consistency during the school year and to be "stationary in one home." She also stated that she wanted a more standard visitation schedule because the father "will manipulate it the way he has always through this whole process. If you go through and

read text message upon text message, it's him harassing me. It's him manipulating the paperwork. And it's him causing me complete anxiety."

According to the mother, the issue whether to alter the father's visitation was tried by implied consent. See Rule 15(b), Ala. R. Civ. P. ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). The mother's argument is correct. As this court stated in Cantrell v. Cantrell, [Ms. 2200590, May 6, 2022] ___ So. 3d ___, ___ (Ala. Civ. App. 2022):

> "[W]e observe that the mother's failure to file a counterclaim asking the trial court to terminate the father's visitation is not determinative of this issue. The father's counsel elicited testimony from the mother indicating that she believed that it was in the best interests of the child to terminate the father's visitation. Similar testimony was elicited from [the mother's husband] and [the mother's brother-in-law]. The father did not object to the foregoing testimony.
>
> > "'[W]here an issue not pleaded by a party is tried before the trial court without an objection by another party, that issue is deemed to have been tried by the implied consent of the parties. Rule 15(b), Ala. R. Civ. P.; Hosea O. Weaver & Sons, Inc. v. Towner, 663 So. 2d 892 (Ala. 1995).'
>
> "A.L. v. S.J., 827 So. 2d 828, 833 (Ala. Civ. App. 2002)(holding that a claim for custody was tried by the implied consent of the parties when the testimony demonstrated that an intervening party wanted custody); C.B. v. J.W., 325 So. 3d

13

829 (Ala. Civ. App. 2020)(holding that whether a child should be forced to resume visitation with the father was tried by implied consent of the parties due to elicited testimony at trial). Because testimony was presented regarding whether the father's visitation with the child should be terminated, this issue was tried by implied consent."

See also Nelson v. Maddox, 270 So. 3d 1178, 1182 (Ala. Civ. App. 2018).

The father also makes a truncated argument that the purported lack of notice that his visitation time might be reduced violated his right to due process. However, he made no such objection at trial and, as noted above, the issue was tried by implied consent. Thus, that argument is without merit.

Further, the father argues that the trial court lacked jurisdiction to consider modifying his visitation because, according to him, the mother did not pay a filing fee in conjunction with her counterclaim as to that issue. First, the mother's counterclaim was regarding the issue of contempt, not a modification of visitation. Further, even if the mother had filed such a counterclaim and failed to pay a filing fee, the failure to pay filing fees associated with a counterclaim is not a jurisdictional defect. See, e.g., Wood v. Gibson, [Ms. 2210060, Apr. 8, 2022] ___ So. 3d ___ (Ala. Civ. App. 2022). Based on the foregoing, we reject the father's

14

arguments that the trial court erred by considering the mother's request that his visitation be modified.

The father next argues that the application of the child-custody-modification standard under Ex parte McLendon violated his rights to due process and equal protection under the 14th Amendment to the United States Constitution and/or that "the failure to award shared custody to fit parents" violated such rights. This court first rejected these arguments, made by the father's attorney on behalf of other clients, in Gallant v. Gallant, 184 So. 3d 387 (Ala. Civ. App. 2014), and then in Gordon v. Gordon, 231 So. 3d 347 (Ala. Civ. App. 2017), and most recently in Shackelford v. Shackelford, [Ms. 2210201, Aug. 5, 2022] ___ So. 3d ___ (Ala. Civ. App. 2022), none of which the father's attorney references in the father's initial appellate brief.[5] The mother notes those cases in her initial appellate brief, but the father's attorney again makes no reference to those cases in his reply brief. We see no need to revisit that issue; the

---

[5]The father's counsel should have been aware of this court's previous rejection of these same constitutional arguments in Shackelford, Gordon, and Gallant. When challenging -- either implicitly or explicitly -- previous rulings by this court, counsel should address the merits of those rulings and discuss why this court should not follow the doctrine of stare decisis. The father's counsel did neither.

father's constitutional arguments as to <u>Ex parte McLendon</u> are without merit.

The father argues that "[t]he parenting schedule set forth in the Court's order," by which we presume he means the February 2022 judgment, as amended, violates public policy as stated in Ala. Code 1975, § 30-3-150.  Section 30-3-150 states:

> "It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage.  Joint custody does not necessarily mean equal physical custody."

The February 2022 order awards the father ample visitation and assures that he has frequent and continuing contact with the child.  The father's argument that the visitation award violates public policy is without merit.

Finally, the father argues that "[t]he parenting time award is not consistent with scientific research regarding the best interests of children."  He cites certain secondary authorities in support of that argument.  However, our custody standards are well settled and are the subject of supreme court precedent that this court must follow.  Ala. Code

16

1975, § 12-3-16. Further, as the mother notes, the father did not make this argument before or during trial but, instead, raised it for the first time in his postjudgment motion, and there is no indication that the trial court considered the merits of this argument when it denied the father's postjudgment motion. Accordingly, we will not consider this argument. See Espinoza v. Rudolph, 46 So. 3d 403, 416 (Ala. 2010) (noting that a trial court is not required to consider a new legal argument in a postjudgment motion when that argument could have been made at trial and that this court will not presume that a trial court exercised its discretion to consider such an argument where there is no indication in the record that the trial court did so).

Based on the foregoing, the February 2022 judgment is affirmed. The mother's request on appeal for an award of attorney's fees is granted in the amount of $3,500.

AFFIRMED.

All the judges concur.